E. H. HOYT, Appellant, v. JOHN F. KEEGAN, Administrator, Appellee.

**TAXATION:** Collateral Inheritance Tax—Bank Deposits of Nonresident. Bank deposits, in resident banks, of a deceased nonresident, whether represented by a "pass book" only or by negotiable certificates, are subject to the collateral inheritance tax law of this state, even though such tangible evidence of the deposits are kept, at all times, by the nonresident owner in the state of his residence, and even though such holding may lead to double taxation, to wit, a tax in this state and a tax in the state where such nonresident resided. (Sec. 1481-a, Code Supp., 1913.)

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

MAY 13, 1918.

APPLICATION for an order in probate. The question involved was whether certain property of the state was sub-

ject to a collateral inheritance tax. The trial court held adversely to the claim of the treasurer of state for an assessment of such tax, and he has appealed.—*Reversed.*

*H. M. Havner,* Attorney General, *J. W. Kindig,* Assistant Attorney General, and *George Claussen,* County Attorney, for appellant.

*Wolfe & Wolfe,* for appellee.

EVANS, J.—Henry Breen was, at the time of his decease, an actual resident of Illinois. He died there on July 23, 1915, intestate. He left surviving him neither wife nor child nor parent. His estate, therefore, passed wholly to collateral heirs. The principal administration upon his estate was had in the state of Illinois. At the time of his death, and for some time prior thereto, he held a certificate of deposit, in the usual form, of one of the banks of Clinton, Iowa, for $1,518. He also had on deposit in a savings bank at Clinton, Iowa, the sum of $6,207, which was evidenced by a savings bank pass book. This pass book and the certificate were at all times kept by the deceased, in his lifetime, in his actual possession in Illinois. Because of these deposits, ancillary administration was had in the probate court of Clinton County, Iowa. An administrator was appointed by such court, who collected the funds in question and reported the same, and applied for an order authorizing him to pay the same to the Illinois administrator. In resistance to such application, the treasurer of state appeared, and claimed the statutory tax upon collateral inheritances, to the extent of five per cent of the fund thus collected by the ancillary administrator. The question, therefore, is whether these funds came within the jurisdiction of the courts of this state, within the meaning of Section 1481-a, Code Supplement, 1913, and became thereby subject to such tax, notwithstanding that the deceased was an actual resident of Illinois. The certificate of deposit is not set

out in the record, but it seems to be conceded that it was, in form, a negotiable instrument. The pass book was not a negotiable instrument.

In determining the actual situs of choses in action as personal property, some authorities distinguish between negotiable paper and the non-negotiable evidences of indebtedness. We shall, therefore, consider the two items involved herein separately, and will take up first the item evidenced by the pass book.

I. We have to do with Section 1481-a, Code Supplement, 1913. This section purports to subject to the collateral inheritance tax the "estates of all deceased persons, whether they be inhabitants of this state or not, and whether such estate consists of real, personal or mixed property, tangible or intangible, and any interest in, or income from any such estate or property, which property is, at the death of the decedent owner, within this state or is subject to, or thereafter, for the purpose of distribution, is brought within this state and becomes subject to the jurisdiction of the courts of this state. * * *"

This statute appears to be identical with a corresponding statute of the state of New York, and is said to have been borrowed therefrom. *In re Estate of Adams,* 167 Iowa 382. It has been held repeatedly, in the state of New York, that bank deposits of nonresidents in the taxing state come within the operation of this statute. *In re Estate of Romaine,* 127 N. Y. 80 (27 N. E. 759); *In re Estate of Whiting,* 150 N. Y. 27 (44 N. E. 715); *In re Houdayer,* 150 N. Y. 37 (44 N. E. 718). The Supreme Court of the United States has held to the same effect. *Blackstone v. Miller,* 188 U. S. 189. The same holding has been announced by the courts of Illinois, Massachusetts, Maryland, and Minnesota. *People v. Griffith,* 245 Ill. 532; *Kennedy v. Hodges,* 215 Mass. 112; *State v. Dalrymple,* 70 Md. 294; *State ex rel. Graff v. Probate Court,* 128 Minn. 371 (150 N. W. 1094).

The general ground of the holding may be indicated by a few excerpts from the cases.

"The question then is narrowed to whether a distinction is to be taken between tangible chattels and the deposit in this case. There is no doubt that courts in New York and elsewhere have been loath to recognize a distinction for taxing purposes between what commonly is called money in the bank and actual coin in the pocket. The practical similarity, more or less, has obliterated the legal difference. [Citing authorities.] In view of these cases, and the decision in the present case which followed them, a not very successful attempt was made to show that, by. reason of the facts that we have mentioned, and others, the deposit here was unlike an ordinary deposit in a bank. We shall not stop to discuss this aspect of the case, because we prefer to decide it upon a broader view. If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the state of New York, then New York may subject the transfer to a tax. [Citing authorities.] But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. * * * What gives the debts validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. * * * So, again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place. * * * Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizen than upon tangible chattels found within the state at

the time of the death. The maxim *mobilia sequuntur per-sonam* has no more truth in the one case than in the other. When logic and the policy of the state conflict with a fiction due to historic tradition, the fiction must give way." *Blackstone v. Miller*, 188 U. S. 189.

"The decedent brought his money into this state, deposited it in a bank here, and left it here until it should suit his convenience to come back and get it. * * * If he had deposited *in specie*, to be returned *in specie*, there can be no doubt that the money would be property in this state, subject to taxation. But instead, he did as business men generally do, deposited his money in the usual way, knowing that not the same, but the equivalent, would be returned to him upon demand. While the relation of debtor and creditor technically existed, practically he had his money in the bank, and could come and get it when he wanted it. It was an investment in this state, subject to attachment by creditors. If not voluntarily repaid, he could compel payment through the courts of this state. The depository was a resident corporation, and the receiving and retaining of the money were corporate acts in this state. Its repayment would be a corporate act in this state. Every right springing from the deposit was created by the laws of this state. Every act out of which those rights arose was done in this state; in order to enforce those rights, it was necessary for him to come into this state; conceding that the deposit was a debt, conceding for all practical purposes and in every reasonable sense, that it was intangible, still it was property in this state, within the meaning of the Transfer Tax Act." *Estate of Houdayer*, 150 N. Y. 37.

The foregoing is quite in harmony with the utterances of this court in *Hunt v. Hopley*, 120 Iowa 695, *Heinz & Fisher v. Board*, 121 Iowa 445, upon an analogous question. It is urged that such a rule results in double taxation.

This is doubtless true, in a very practical sense. And yet it has uniformly been held that it is not double taxation in a constitutional sense. *In re Hartman*, 70 N. J. Eq. 664 (62 Atl. 560) ; *Hopkin's Appeal*, 77 Conn. 644 (60 Atl. 657) ; *In re Daly*, 182 N. Y. 524 (74 N. E. 1116).

It must be conceded, also, that there is a measure of inconsistency on the part of the taxing power, in the different rules applied as against the resident and the nonresident, in fixing the legal situs of intangible personal property. As against the resident, it attaches the personal property to his person, and fixes the legal situs thereof within the state, even though the actual situs be in another state. As against the nonresident, it separates the property from the person of the owner, and fixes upon the actual situs thereof as the legal situs, regardless of the domicile of the owner. As to this exercise of power and the method thereof, the Supreme Court of the United States has said:

"No doubt this power on the part of two states to tax on different and more or less inconsistent principles leads to some hardship. It may be regretted, also, that one and the same state should be seen taxing, on the one hand, according to the fact of power, and, on the other, at the same time, according to the fiction that, in successions after death, *mobilia sequuntur personam*, and domicil governs the whole. But those inconsistencies infringe no rule of constitutional law." *Blackstone v. Miller*, 188 U. S. 189.

That personal property of the testator domiciled in New Jersey is located in New York, and is subject to the payment of a succession tax there, does not prevent the exaction of a succession tax with respect thereto by New Jersey. *In re Estate of Hartman*, 70 N. J. Eq. 664 (62 Atl. 560). The court said that it was apparent that, if the assessment of the tax in New Jersey be sustained, the result will be the requirement of the payment of two taxes of like character by the same legatees for the right of succession to

the gifts of the testatrix; but that this unfortunate situa-
tion cannot control the determination of the questions pre-
sented, for such a condition frequently arises, and, while
its presence always induces most careful consideration on
the part of the court to find some legal method to prevent
it, it must be submitted to, unless it can be avoided under
settled rules relating to the subject.

So it was held in *Hopkin's Appeal*, 77 Conn. 644 (60
Atl. 657), that payment of a transfer tax to the state in
which the property is situated does not prevent the exaction
of a similar tax by the state in which the testator was dom-
iciled. See, also, note to *Mann v. Carter*, (N. H.) 15 L. R.
A. (N. S.) 151.

We think it must be said that, under the clear weight
of authority, the savings bank deposit was subject to the
collateral inheritance tax, under our statute.

II. Does the same rule apply to the certificate of de-
posit as a negotiable paper? We held, in *Gilbertson v.
Oliver*, 129 Iowa 568, that negotiable paper held by a non-
resident in the state of his own domicile was not subject
to the tax, even though the debtor resided within this state.
In that case, Section 1467, Code, 1897, since repealed, was
the statute under consideration. The present statute, Sec-
tion 1481-a, is more comprehensive and searching in its
provisions, and the question remains whether the same con-
struction should be applied to it as was applied in the *Gil-
bertson* case to Section 1467. Clearly, it was not intended
as a re-enactment of Section 1467. Clearly, also, it was
intended to reach property which could not be reached un-
der the provisions of the former section. The reason usual-
ly given for making a distinction between negotiable and
non-negotiable paper on the question of situs of the prop-
erty represented thereby is that negotiable paper is in-
separable from the property right, and is, in a sense, the
property entity; that its actual situs, therefore, determines

the actual situs of the intangible property itself; that, therefore, if a nonresident has negotiable paper in his own possession in the state of his own domicile, then the actual situs of the property itself is there. Some such distinction is recognized by the Supreme Court of the United States in *Blackstone v. Miller*, supra.

There is also a question of public policy involved, in that it imposes a burden upon the negotiable paper of the state which must, eventually and indirectly, be borne by the debtor residents of the state. The question of public policy, however, is one only for the consideration of the legislature.

The question confronting us now is whether a fair construction of the present statute will permit a distinction to be made as between intangible property represented by negotiable paper and that represented otherwise. The reason for holding that the savings bank deposit came within the jurisdiction of the courts of this state by the administration proceedings applies in the same manner and with the same force to the negotiable certificate of deposit. This precise question received the consideration of the Supreme Court of Minnesota in *State v. Probate Court*, 128 Minn. 371 (150 N. W. 1094), wherein it was held that a distinction was not permissible, in the application of a similar statute. It was therein said:

"Whether the right of succession to promissory notes held by nonresidents is taxable by the state having jurisdiction over the maker does not appear to have received much attention from the courts; but it is difficult to see why. the reasoning which establishes the right to tax the transfer of an ordinary debt does not also establish the right to tax the transfer of a promissory note, which is merely an evidence of the debt. * * * While there are decisions to the contrary, it is fairly well settled that debts evidenced by promissory notes are assets at the domicile of

the debtor, and are sufficient to confer jurisdiction for administration purposes upon the courts of such domicile. The Supreme Court of the United States says: 'The general rule of law is well settled that, for the purpose of founding administration, all simple contract debts are assets at the domicile of the debtor, and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable.' [Citing authorities.] Where the courts of the debtor's domicile have jurisdiction of the debt for purposes of probate administration, it goes without saying that they have jurisdiction for the purpose of enforcing a succession tax. It is said that bonds and commercial paper are something more than mere evidences of indebtedness, and it has been held that they may be subject to a succession tax by the state within whose jurisdiction they are found, although neither the debtor nor the creditor are residents of such state, and this is perhaps true: but if so, it does not divest the state having jurisdiction of the debtor of any power possessed by such state to enforce its own tax. It is unquestioned that the right to succeed to the ownership of the property of a decedent ought not to be burdened with a double tax, but it is equally unquestioned that, under some circumstances, both the state where the decedent resided and the state where his property is located or his debtor resides have power to impose such tax. Where the power exists, the extent to which it shall be exercised rests exclusively with the legislature. The determination of such questions is outside the domain of the courts. The case at bar involves no question of double taxation, however, for the tax now under consideration is the only tax sought to be imposed. The relator must in-

voke the law of Minnesota to obtain the possession and the beneficial enjoyment of the property in question.   This is true as to all the sorts of property here involved, and we are of the opinion that the state has power, in respect to all such property, to tax the right to succeed to the ownership thereof."

· The sweeping provisions of our present statute indicate an intent of the legislature to exercise the full taxing power of the state as respects all forms of property coming within the jurisdiction of the courts of the state.   Under these provisions, we see no way to withhold the application thereof from negotiable paper.

We think, therefore, that both items involved in the controversy were subject to the tax claimed.   The order of the trial court is, therefore, reversed.—*Reversed and remanded.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.