WILLIAM H. CHAFFIN et al., Appellees, v. RAY E. JOHNSON, Treasurer of State, Appellant.

TAXATION: Inheritance Taxes—Property Subject to Jurisdiction of
1 Iowa Courts. A promissory note executed by a resident of this state and secured by a mortgage on Iowa real estate is ''subject to the jurisdiction of the courts of this state'' (Sec. 7306, Code of

1924), and is, therefore, subject to an inheritance tax, even though the note and mortgage belonged to a nonresident deceased, and had never been kept in this state.

**TAXATION:** Inheritance Taxes—Two-Year Limitation. An inheritance
2  tax may not be exacted (Sec. 7317, Par. 3, Code of 1924) on the passage of the property of a deceased when, within two years prior to the death of the deceased, the property passed to the deceased on the payment of such tax.

**Headnote 1:** 37 Cyc. p. 1565 (Anno.)  **Headnote 2:** 37 Cyc. p. 1566 (Anno.)

*Appeal from Page District Court.*—J. S. DEWELL, Judge.

JUNE 25, 1925.

ACTION in equity, for the purpose of determining the liability of an estate to the payment of a collateral inheritance tax. The trial court denied the right of the treasurer of state to collect such tax, and the state treasurer appeals.—*Affirmed in part; reversed in part.*

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *George A. Anderson,* County Attorney, for appellant.

*Stipe, Davidson & Davidson,* for appellees.

FAVILLE, C. J.—I. On March 20, 1922, one Chaffin, a resident of the state of California, died in said state, intestate, and without issue. All of the property involved in this action passed to collateral heirs. At the time of his death, Chaffin owned three items of property which are involved in this lawsuit. First, a promissory note of $4,800, the three makers of which were residents of the state of Iowa at the time of the execution of the note. One of said makers died, and his estate was in the process of administration in the district court of Page County, Iowa, at the time of Chaffin's death. The other two makers were still residents of Page County, Iowa. Said note was secured by mortgage upon an interest in 120 acres of land in

1. TAXATION: inheritance taxes: property subject to jurisdiction of Iowa courts.

Page County, Iowa. The second item involved in, this action was an undivided one-eighth interest in a promissory note of $10,000, executed by makers who were residents of Iowa, and secured by a mortgage on 80 acres of land in Page County, Iowa. The decedent had acquired the interest in this note and mortgage from the estate of a deceased brother, who was a resident of the state of Iowa at the time of his decease. The third item involved in the litigation is an undivided one-eighth interest in 240 acres of land located in Page County, Iowa, which the decedent had acquired by inheritance from said deceased brother. In regard to the last two items, it appears that the deceased brother of Chaffin died on the 14th of December, 1920, and that a collateral inheritance tax upon the estate of said decedent passing to his collateral heirs was paid on April 30, 1923.

Chapter 38, Acts of the Thirty-ninth General Assembly, became effective by publication on March 19, 1921. The said act repealed the law as it formerly existed in Section 1481-a Code Supplement, 1913, and enacted said chapter in lieu thereof Section 2 of said Chapter 38 contains the following provision:

"The estates of all deceased persons in any property whether the decedents be inhabitants of this state or not, and whether such estates consist of real, personal or mixed property, tangible or intangible, and any interest in, or income from any such estate or property which estate or property is, at the death of the decedent owner within this state, or is subject to the jurisdiction of the courts of this state, or thereafter is brought within this state and becomes subject to the jurisdiction of the courts of this state; or the property of any decedent, domiciled within this state at the time of the death of such decedent, even though the property of such decedent so domiciled was situated outside of the state, except real estate located outside of the state, passing in fee from the decedent owner, which shall pass in any manner herein described shall be subject to tax as herein provided."

The first question for our determination is whether, under said Chapter 38, the note of $4,800 is subject to a collateral inheritance tax. There is no evidence in the record that the note itself was ever within the state of Iowa after its execution. It

appears that general administration of the estate of the decedent had been had in the state of California, and that no ancillary administration had been taken out in the courts of this state. We squarely meet the proposition as to whether a debt evidenced by a promissory note and secured by a real estate mortgage on lands within this state, where the debtors are residents of this state and the evidence of the indebtedness is not within this state, comes within the purview of said Chapter 38, where the decedent was a resident of a foreign state.

Chapter 38 specifies the kinds of property that are subject to collateral inheritance tax. It designates property which at the death of the decedent owner is within this state, and also property that "is subject to the jurisdiction of the courts of this state." If the note and mortgage referred to fairly come within the classification of being property subject to the jurisdiction of the courts of this state, then they are subject to a collateral inheritance tax; otherwise not.

It has been frequently held that a collateral inheritance tax is a succession tax, and not a property tax. *Herriott v. Potter,* 115 Iowa 648; *In re Estate of Stone,* 132 Iowa 136; *Morrow v. Durant,* 140 Iowa 437; *Eddy v. Short,* 190 Iowa 1376; *Waterman v. Burbank,* 196 Iowa 793.

In *Hoyt v. Keegan,* 183 Iowa 592, we had before us a similar question to the one presented in the instant case. In that case the decedent was a resident of the state of Illinois at the time of his death. His estate passed to collateral heirs. At the time of his death, he held a certificate of deposit on a bank in the state of Iowa, and also had on deposit an additional sum evidenced by a savings bank pass book. Both the pass book and the certificate were in the actual possession of the decedent at the time of his death in the state of Illinois. In said case we reviewed the authorities, and held that the amount represented by the certificate of deposit, as well as that represented by the savings bank pass book, was subject to a collateral inheritance tax in this state. It is scarcely necessary that we repeat the discussion of the *Hoyt* case, which contains copious quotations from the decisions of the courts. The statute, Section 1481-a, Code Supplement, 1913, under which said decision was rendered, was somewhat ambiguous, and the ambiguity has been

clarified by the language of Chapter 38, above quoted. The *Hoyt* case, however, is applicable to the present statute.

It is insisted by appellees that the *Hoyt* case and the case of *Blackstone v. Miller,* 188 U. S. 189 (47 L. Ed. 439), cited with approval by us in the *Hoyt* case, and other similar cases, refer to bank deposits that are located in the state of Iowa; and that·a distinction exists between a case involving a bank deposit and one involving a note and mortgage where the debtor resides in Iowa and the mortgaged property is located in this state and the evidence of indebtedness is located in a foreign state.

As applied to the statute under consideration, the distinction is shadowy and without substance. The deposit of funds in a bank and the taking of a negotiable certificate of deposit therefor create the relationship of debtor and creditor, for the purpose of this statute, in .the same way that the loaning of money to an individual and the taking of a note and mortgage on real estate create the relationship of debtor and creditor. An ordinary deposit of money in a bank is something more than a bailment of specific funds. The basis of the right to tax under this statute in this case is that, the debtor being a resident of Iowa, and the debt being secured by a real estate mortgage in Iowa, the property, within the meaning of this statute, is "subject to the jurisdiction of the courts of this state."

In *Blackstone v. Miller,* supra, the Supreme Court of the United States said:

"What gives the debt validity? Nothing but the fact that the law of the place where the debtor is, will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes; yet we nevertheless are subject to the criminal law, and it affords one of the motives for our conduct. So again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place. To test it; suppose that New York should turn back the current of legislation and extend to debts the rule still applied to slander, that *actio personalis moritur cum persona,* and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain that the right of the

foreign creditor would be gone. Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way.''

The fact that in the *Hoyt* case ancillary administration had been had in the state of Iowa does not affect the matter. The question is not whether legal process has been resorted to for the collection of the debt due from the debtor. The debt in fact exists in Iowa, although it may be evidenced by an instrument in the possession of a person in a foreign state. The courts of this state have jurisdiction to enforce the collection of that debt against the debtor residing in this state and against the property secured by the mortgage; and the creditor must invoke the law of this state to obtain the possession and the benefit and enjoyment of the property in question. That the state has power in respect to property so located, or brought within jurisdiction of its courts, to tax the right to succeed to the ownership, is expressly held by us in *Hoyt v. Keegan,* supra.

It must be remembered that the tax under this statute is not imposed against the property itself. It is a tax upon the right to the succession.

As is said by the Supreme Court of the United States in *Liverpool & L. & G. Ins. Co. v. Board of Assessors,* 221 U. S. 346 (55 L. Ed. 762) :

''The legal fiction expressed in the maxim *mobilia sequuntur personam* yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicile. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor, and is of value to the creditor, because he may be compelled to pay; and power over the debtor at his domicile is control of the ordinary means of enforcement.''

We reach the conclusion that, under the statute, the note

of $4,800 and mortgage securing the same were subject to a collateral inheritance tax, and that the trial court erred in holding otherwise. The fact that the adoption of such a rule results in double taxation, in a practical sense, by two different sovereignties, does not render the statute subject to constitutional objection. *Hoyt v. Keegan,* supra, and cases cited therein.

II. What we have said in the foregoing division of this opinion regarding the note of $4,800 applies equally to the right of the state to tax the interest of the decedent in the note of $10,000, and the interest of the decedent in the 240 acres of real estate. The sole remaining question in the case, then, is as to whether or not the last two items of property are subject to a collateral inheritance tax in this particular case, because of the fact that the said properties were subjected to a collateral inheritance tax by the state at the time the decedent acquired the same, and within two years of his death.

2. TAXATION: inheritance taxes: two-year limitation.

The original collateral inheritance tax law of this state was Chapter 28, Acts of the Twenty-sixth General Assembly, and became effective in 1896. It passed into the Code of 1897 as Chapter 4, Title VII, thereof. Various amendments were had to said original act: Acts of the Thirty-fourth General Assembly, Chapter 68; Acts of the Thirty-fifth General Assembly, Chapter 120 (Code Supplement, 1913, Section 1481-a). Under no one of these acts was any provision made for exempting property from a collateral inheritance tax where the property had been previously subjected to a collateral inheritance tax in this state.

Prior to the enactment of Chapter 38, Acts of the Thirty-ninth General Assembly, there was a provision for the allowance of certain deductions from an estate subject to collateral inheritance tax. This was found in Section 1481-a2, Code Supplement, 1913. Section 5 of Chapter 38, Acts of the Thirty-ninth General Assembly, by express terms, repealed said Section 1481-a2, Code Supplement, 1913, and enacted a new statute in lieu thereof, pertaining to the debts deductible from the gross value of an estate. Said Section 5 contained a paragraph "c," as follows:

"An amount equal to the value at the time of the decedent's death of any property, real, personal or mixed, which can be identified as having been received by the decedent as a share

in the estate of any person who died within two years prior to the death of the decedent, or which can be identified as having been acquired by the decedent in exchange for property so received, if an estate tax under this act was collected from such estate, and if such property is included in decedent's gross estate.''

There was no such provision, or anything similar to it, in Section 1481-a2, Code Supplement, 1913, which was repealed, and in lieu of which said Section 5, Chapter 38, Acts of the Thirty-ninth General Assembly, was enacted. In other words, Paragraph c, above quoted, was an entirely new and distinct provision in the law.

The general subject-matter of deductions from the gross estates of decedents had been treated under Section 1481-a2, Code Supplement, 1913; but no reference whatever was made therein to any deduction for property upon which a collateral tax had been previously paid, and that had passed to the estate of the decedent.

Under the terms and provisions of Chapter 38, Acts of the Thirty-ninth General Assembly, the preceding estate which may be deducted from an estate subject to the tax is one upon which a collateral inheritance tax has been collected ''under this act.''

Was the tax on the preceding estate paid ''under this act?'' It appears from the record that the property in question was derived by the decedent, James Chaffin, from his brother, Louis V. Chaffin. It appears that the latter died intestate on the 14th of December, 1920, and that the property herein involved passed to the decedent, James Chaffin, in the due administration of the estate of Louis V. Chaffin. As stated, the original collateral inheritance tax law was repealed and re-enacted by said Chapter 38, Acts of the Thirty-ninth General Assembly, which became effective by publication on March 19, 1921. James Chaffin died on March 20, 1922. No collateral inheritance tax was paid under the old statute on the estate of Louis V. Chaffin prior to the repeal of said statute and the enactment of said Chapter 38. The collateral inheritance tax upon the estate of Louis V. Chaffin was paid April 30, 1923, thirteen months after the death of James Chaffin.

Section 16 of said Chapter 38 is as follows:

"As to estates of decedents passing to beneficiaries named in Paragraph a of Section four (4) hereof, this act shall apply only where decedent dies after the taking effect of this act, and as to estate of decedents passing to beneficiaries named in Paragraph b of Section four (4) of this act, the rate of tax shall be five per cent (5%) as to all persons dying before this act takes effect."

The legislature expressly intended to give a retroactive effect to this statute. Under it the estate of a decedent passing to collateral heirs is to be taxed at the rate fixed, where the decedent died "before this act takes effect." That is precisely the situation in the instant case. The decedent Louis V. Chaffin died *before* the act took effect. The tax was paid *after* the act took effect. Presumably the tax was paid at the rate fixed by Chapter 38. In any event, it was paid "under this act;" for the statute expressly provides for the collection of such a tax from the estates of those dying before the act took effect, and where the tax was paid after the act took effect. Therefore, the tax in this case was paid "under this act," and not otherwise. Said Section 16 seems to cover the situation exactly. Where said tax has been paid under the act within two years, a second inheritance tax is not to be collected.

It follows that the court was correct in holding that the share in the $10,000 mortgage and in the real estate in question was not subject to the payment of a collateral inheritance tax.

The cause must be, and it is,—*Affirmed in part; reversed in part*.

All the justices concur.