STATE EX REL. WALKER ET AL., APPELLANTS, *v.* JONES, EXECUTOR, RESPONDENT.

(No 6,175.)

(Submitted October 22, 1927. Decided November 23, 1927.)

[261 Pac. 356.]

*Taxation—Inheritance Taxes—Mortgages on Property in State Held by Estate of Nonresident Taxable—Appeal—Decisions of Supreme Court—How to be Viewed.*

Taxation — Inheritance Taxes — Intention of Legislature in Enacting Chapter 150, Laws of 1925.
1. By enacting Chapter 150, Laws of 1925 (applicable to the case considered) the legislature intended to impose an inheritance tax on the succession or devolution of all real and personal property, of every kind and description, within the jurisdiction of the state, and upon any interest therein (inter alia, upon mortgages), whether owned by a resident or nonresident at the time of his death.

Same—Inheritance Tax—Nature.
2. An inheritance tax is not one placed upon property but is one imposed on the privilege of acquiring property by inheritance.

---

1. Taxation of collateral inheritances, see notes in 41 **Am. St. Rep.** 580; 88 **Am. St. Rep.** 513. Collateral, inheritance and transfer taxes, see note in 127 **Am. St. Rep.** 1036. See, also, 26 **R. C. L.** 195.

2. Nature of inheritance tax, see note in 33 **L. R. A.** (n. s.) 606. See, also, 26 **R. C. L.** 196.

[80 Mont. 574.]

Same—Mortgage on Real Property Securing Promissory Note if Owned by Nonresident Decedent is Assets Where Debtor Resides.

3. A promissory note secured by real estate mortgage is mere evidence of debt; if owned by the estate of a nonresident decedent, the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable.

Same—Mortgage on Real Property in State Held by Estate of Nonresident Subject to Inheritance Tax—Reason.

4. *Held,* that since promissory notes and mortgages upon land within Montana and owned and held by a nonresident at the time of his death are dependent for their collection upon the exercise of the power of the courts of this state who have jurisdiction over the person of the debtor and the property involved, the mortgages are property within the state, upon which a tax may be imposed under the inheritance tax law.

Appeal—Opinions of Supreme Court to be Taken in Connection With Facts in Case Decided.

5. Expressions used in an opinion of the supreme court must be taken in connection with the facts in the case under consideration.

Taxation—Inheritance Tax—Imposition on Same Property in Different States not Open to Constitutional Objection.

6. The fact that an inheritance tax upon the same property may be exacted by more than one state does not infringe any rule of constitutional law.

---

[1] Constitutional Law, 12 C. J., sec. 390, p. 887, n. 38. Taxation, 37 Cyc., p. 786, n. 41, p. 804, n. 58, p. 1559, n. 96, p. 1560, n. 3, p. 1561, n. 7.

[2] Taxation, 37 Cyc., p. 718, n. 86, p. 1553, n. 60.

[3, 4] Executors and Administrators, 23 C. J., sec. 45, p. 1016, n. 87, p. 1017, n. 88. Mortgages, 41 C. J., sec. 201, p. 386, n. 56 New. Taxation, 37 Cyc., p. 1562, n. 13, 15.

[5] Courts, 15 C. J., sec. 376, p. 970, n. 31. Taxation, 37 Cyc., p. 717, n. 83.

[6] Taxation, 37 Cyc., p. 1565, n. 34.

*Appeal from District Court, Cascade County; W. H. Meigs, Judge.*

ACTION by the State of Montana, on the relation of J. W. Walker and others, against Homer H. Jones, executor of the

---

3. Situs of debt for purpose of succession tax, see notes in 11 Ann. Cas. 119; Ann. Cas. 1912A, 903; Ann. Cas. 1915B, 864. Debt due to nonresident secured upon land within the state as subject of inheritance tax, see notes in 9 L. R. A. (n. s.) 1104; 35 L. R. A. (n. s.) 784. See, also, 26 R. C. L. 215. Succession tax at domicile of debtor in respect of debt due nonresident secured upon property within state, see note in 42 A. L. R. 360.

5. Conclusiveness of prior decisions on appeal as to effect of dicta, see note in 34 L. R. A. 344. What constitutes dicta of court, see note in Ann. Cas. 1912C, 1248.

6. Exacting succession tax in two or more states as double taxation, see note in 15 L. R. A. (n. s.) 150. See, also, 26 R. C. L. 217.

estate of Ebenezer G. Ranney, deceased. Judgment for defendant and plaintiffs appeal. Reversed.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Appellants, submitted a brief; *Mr. Angstman* argued the cause orally.

Citing: *City of Davenport* v. *Mississippi etc. Ry. Co.,* 12 Iowa, 539; *Chaffin* v. *Johnson,* 200 Iowa, 89, 204 N. W. 424; *Hoyt* v. *Keegan,* 183 Iowa, 592, 167 N. W. 521; *Blackstone* v. *Miller,* 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277 [see, also, Rose's U. S. Notes;] *State ex rel. Marsh* v. *Probate Court,* 168 Minn. 508, 210 N. W. 389; *State ex rel. Graff* v. *Probate Court,* 128 Minn. 371, 150 N. W. 1094; *Chadwick* v. *State,* 133 Minn. 117, 157 N. W. 1076; *In re Stanton's Estate,* 142 Mich. 491, 105 N. W. 1122; *In re Merriam's Estate,* 147 Mich. 630, 111 N. W. 196; *In re Rogers' Estate,* 149 Mich. 305, 11 L. R. A. (n. s.) 1134, 112 N. W. 931; *Kinney* v. *Stevens,* 207 Mass. 368, 93 N. E. 586; *Helser* v. *State,* 128 Md. 228, 97 Atl. 539; *In re Hondayers' Estate,* 150 N. Y. 37, 55 Am. St. Rep. 642, 34 L. R. A. 235, 44 N. E. 718; *In re Daly's Estate,* 100 App. Div. 373, 91 N. Y. Supp. 858; *In re Lowell's Estate,* 121 Misc. Rep. 106, 200 N. Y. Supp. 442.

That this court will follow what appears to be the overwhelming weight of authority on this question seems to be foreshadowed in the case of *State ex rel. Banker's Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894. In this case the court quoted with approval the following from the supreme court of Idaho: "Neither can we, by any stretch of the imagination, conceive of a condition arising whereby the aid of our laws might be invoked in order to reduce the inherited property to possession."

This is a recognition of the principle for which we are contending, viz., that since resort must be and already has been had to the courts of this state for ancillary proceedings and must be had for the enforcement of the notes and foreclosure

of the mortgages, the property is within the jurisdiction of this state and subject to a tax.

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, submitted a brief; *Mr. Samuel B. Chase,* of Counsel, argued the cause orally.

The following five propositions have been decided in this state in regard to taxation of notes and mortgages, and particularly in regard to inheritance taxes on notes and mortgages: 1. That the situs of the notes and mortgages in this case was at the time of the death of decedent in the state of New York. (*Gallatin County* v. *Beattie,* 3 Mont. 173; *Holland* v. *Commissioners,* 15 Mont. 460, 39 Pac. 575; *State ex rel. Rankin* v. *Harrington,* 68 Mont. 1.)   2. That the record of the mortgage is not the mortgage nor any more than any other copy of the mortgage, and has no effect upon the taxability of the debt. (*Gallatin* v. *Beattie,* supra.)   3. That the same rules as to taxability apply to inheritance taxes as apply to general taxation. (*State ex rel. Murray* v. *Walker,* 64 Mont. 215, 210 Pac. 90.)   4. That no inheritance tax will be collected unless the exercise of some essential privilege incident to the transfer of the title depends for its legality upon the law of Montana. (*State ex rel. Bankers Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894.)   5. That it was not the intention of the legislature to exact a succession or inheritance tax upon property the situs of which is not within this state, and that the words in the statute "within the state or within its jurisdiction" mean, simply, property within the state. (*State ex rel. Bankers Trust Co.* v. *Walker,* supra.)

We shall discuss these cases more fully later on, but at this time cite them merely to support the above propositions which we believe are determinative of this case, and the application of which points the clear distinction between the instant case and all of the cases cited by appellants in their brief.

(After an extended discussion of the cases cited by appellants) : We shall turn now to the Montana decisions which are a complete answer to any and all questions which are before the court in the case at bar.

The case of *Gallatin County* v. *Beattie,* is authority for the proposition that in Montana a mortgage is but security for a debt and is a chattel like any other personal property and as such is subject to taxation in the county wherein it is found. This is a clear recognition of the doctrine recognized in the later cases,—that the actual situs of the note and mortgage fixes its situs for purposes of taxation. Counsel for the state insists that this is merely a provision of general taxation, but that is not the case. It is the decision of this court that the situs of the note and mortgage is where the note and mortgage are actually found. (*Holland* v. *Commissioners,* 15 Mont. 460, 39 Pac. 575.) As pointed out by the court in *State ex rel. Rankin* v. *Harrington,* 68 Mont. 1, on page 27, 217 Pac. 681, negotiable instruments are distinguishable from intangible property. There the court quotes with approval the language of Judge Taft in *Walker* v. *Jack,* 88 Fed. 576, saying: "After stating the general rule that intangible property is taxable at the residence of its owner, said: 'Certain exceptions to this rule are recognized. One is where the chose in action is represented by a negotiable bond, property in which passes by delivery. In such a case the evidence of title is in such form, and is so important an element of the value of what it represents, as to make it closely analogous to tangible property, and to give it a situs for taxation where the negotiable evidence of its existence actually is, even though the owner may live elsewhere.' "

There are three general theories for determining the situs of intangible personal property for the purposes of taxation. One is the theory of *"mobilia sequuntur personam"*; the second is business or actual situs of the property, in this case the evidence of debt; the third is the physical situs of the property,

or the place where the evidence of the debt is at a certain time.

It was practically conceded by counsel for the state that Montana has adopted the rule that the actual situs of the personal property of the nature of that involved in this action governs so far, a least, as general taxation is concerned. Cases in which the actual situs was recognized as controlling in Montana are *Floweree Cattle Co.* v. *Lewis and Clark County,* 33 Mont. 32, 81 Pac. 398, where the property in question was range cattle and the business or actual situs was recognized; and *Monidah Trust Co.* v. *Sheehan,* 45 Mont. 424, where the property involved was notes and mortgages.

In the case of *State ex rel. Murray* v. *Walker,* 64 Mont. 229, 210 Pac. 90, the court lays down this rule: "Although a tax of the character of one under consideration is not a property tax, but an excise upon an inheritance—a duty imposed upon the privilege of receiving property by inheritance (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267; *In re Touhy's Estate,* 35 Mont. 431, 90 Pac. 170), it is nevertheless subject to the general rules which determine when a tax of any character is imposed."

The case of *State ex rel. Rankin* v. *Harrington,* supra, discusses the history of legislation on the question of taxation fully, citing and discussing all of the cases heretofore referred to. On page 25, the court says: "The 'fiction of law' that 'all intangible property is presumed to have its situs at the domicile of the owner * * * must give way * * * in the face of contrary facts.' (Citing cases.)"

In the case at bar it can make no difference which of the theories for determining situs is adopted. The domicile of the owner was in the state of New York, the business situs was in the state of New York and the notes and mortgages were physically present in the state of New York at the time of the death of the decedent.

The *Frick Case* (268 U. S. 473, 42 A. L. R. 327, 69 L. Ed. 1058, 45 Sup. Ct. Rep. 603), is a clear holding that in the case

of tangible personal property, the situs of which is fixed and determined, only the state of the situs can impose an inheritance tax. The *Harrington Case* shows plainly that this court is inclined to place certain property, such as notes and mortgages in the same category with tangible personal property. The cases cited in 42 A. L. R. lead inevitably to the conclusion reached by the editor that where there is an actual situs of tangible personal property, the rule of the *Frick Case* should be applied.

More conclusive, however, than any of these considerations is the case of *State ex rel. Bankers Trust Co.* v. *Walker*, 70 Mont. 484, 226 Pac. 894, where the court lays down clearly and without reservation the principles which must be applied to inheritance taxes. In view of that case, nothing could be clearer than that in the instant case the exercise of no essential privilege incident to the transfer of title depends for its legality upon the law of Montana. This court itself says that the "universal rule is that the distribution of a decedent's estate is governed by the law of the place of his actual domicile at the time of his death."

The practical situation is that should the legatee who receives these notes and mortgages in the distribution come to Montana, bringing with him the proper documents showing the transfer of said property under the laws of New York, and should file an action for the foreclosure of any of the mortgages, the courts of this state would perforce accept the evidence of transfer and foreclose the mortgages. Nothing more than this can be required to show that Montana exercises no authority over the transfer of this property. The transfer would be complete before the foreclosure action was commenced.

The court in the case last cited says: "The intention clearly was to limit the application of statutes to such property of a nonresident as is physically within the state." It seems that nothing more could or can be said. Not only this property was not within the state physically, but under none of the rules

for determining situs of personal property was this property within the state or within its jurisdiction.

In view of the decision in the *Frick Case* and the decisions of this state clearly giving a situs to personal property of this nature and bringing it, as we view the matter, within the purview of the *Frick Case*, we have very grave doubt as to the constitutionality of the statute if construed in the manner urged by the state. Most of the cases cited by the state rest upon the construction placed by the courts deciding them upon the *Blackstone Case*. A careful perusal of the *Blackstone Case* shows that it applies only to bank deposits and intangibles of that nature. After the decision in that case, the courts of the state of New York decided that a bond secured by mortgage, which is nothing other than a real estate mortgage bond or note secured by mortgage, would not come within the purview of the statute providing for taxation of property within the jurisdiction.

The conclusion of appellants in their brief is misleading. It is there argued "that since resort must be and already has been had to the courts of this state for ancillary proceedings and must be had for the enforcement of the notes and fore-closure of the mortgages, the property is within the jurisdiction of this state and subject to a tax." We made special reference in our statement of the case to the fact that administration in Montana is sought only in connection with real estate, and that the ancillary proceedings have no effect upon the title to these notes and mortgages. Under the Montana decisions above there is, of course, no force to the argument that because foreclosure proceedings may be brought here, this is property within the jurisdiction.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the state from a judgment entered in favor of the defendant in a controversy submitted to the dis-

trict court of Cascade county on an agreed statement of facts under section 9872, Revised Codes 1921.

The facts are that Ebenezer G. Ranney died testate at his domicile in New York in May, 1925, and pursuant to the provisions of his will letters testamentary were issued to the defendant. As the decedent owned land in Cascade and other counties of this state ancillary letters were issued to the defendant by the district court of Cascade county.

Among decedent's assets were promissory notes payable to his order, executed by residents of Montana and secured by mortgages upon real estate in Montana, duly recorded. Some of the notes were made payable in New York, others in Montana. The notes and mortgages were, at the time of the death of decedent, and ever since their delivery by the makers have been, located at the residence of the decedent in New York. These were not included in the probate proceedings in Cascade county.

The state contends that the notes and mortgages are subject to an inheritance, or succession, tax; the defendant contends that they are not.

The question for determination has not hitherto been presented to this court. Montana has had an inheritance tax law in some form or other for thirty years. The present law was adopted from Wisconsin in 1921.

Section 1 of the 1921 Act, Session Laws 1921, Chapter 14, page 772, being section 10377, Revised Codes 1921, re-enacted Session Laws of 1923, Chapter 65, page 140, re-enacted Session Laws of 1925, Chapter 150, page 265, re-enacted Session Laws of 1927, Chapter 105, page 353, provides in part: "A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, * * * in the following cases, except as hereinafter provided: * * * (1) When the transfer is by will or by intestate laws of this state from any person dying possessed of the property while a resident of the state. (2) When a transfer is by will or intestate law, of property within the state or within its jurisdiction and

the decedent was a nonresident of the state at the time of his death.''

Subdivision 3 of section 12 of the 1925 Act (Session Laws 1925, p. 272) applicable to this case, provides that any personal representative, trustee, heir, devisee or legatee of a nonresident decedent leaving no estate requiring administration in this state, desiring to transfer any stocks, bonds, mortgages or other securities, or other personal property in this state, or within the jurisdiction of this state, may make application to the state board of equalization "for the determination whether there is any tax due upon account of the transfer thereof, and the amount of any such tax," and shall furnish the board certain information, the character of which is prescribed. "From the information so furnished them and such information as they may be able to obtain with reference thereto" the board shall ascertain and determine the amount of the tax. The next subdivision provides that if the personal representative, trustee, heir, devisee or legatee of such "nonresident decedent" has not complied with the provisions of subdivision 3, "upon the matter being called to its attention" the board shall proceed to obtain information and assess the tax on its own initiative.

Terms are defined in section 22 of the 1923 Act, Session Laws, page 164, as follows: "The words 'estate' and 'property' as used in this Act shall be taken to mean the real and personal property or interest therein passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees, or vendees, and not as the property or interest therein of the decedent, grantor, donor, or vendor, and shall include all personal property within or without the state. The word 'transfer' as used in this Act shall be taken to include the passing of the property or interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift, or appointment in the manner herein prescribed to each individual or corporation. The word 'decedent' as used in this Act shall include the testator, intestate, grantor, bargainer, vendor, or

donor. 'Intangible' or 'intangible property' when used in this Act without other qualifications, shall be taken to include all moneys, stocks, bonds, notes, securities and credits of all kinds, secured or unsecured.   *   *   *   .''

A study of the foregoing provisions, with others not neces-
[1] sary to be considered in this opinion, leaves no doubt that the legislature intended to exercise the utmost taxing power of the state in the imposition of excise, or succession, taxes. (*Tyler* v. *Dane County*, 289 Fed. 843; *Hoyt* v. *Keegan*, 183 Iowa, 592, 167 N. W. 521; *State ex rel. Graff* v. *Probate Court*, 128 Minn. 371, L. R. A. 1916A, 901, 150 N. W. 1094; *Peabody* v. *Treasurer and Receiver General*, 215 Mass. 129, 102 N. E. 435.) In other words, the legislature intended to levy an inheritance tax, except as it has provided otherwise, "on the succession or devolution of all real and personal property, of every kind and description, within the jurisdiction of the state, and upon any interest therein, whether owned by a resident or nonresident at the time of his death." (*Rhode Island Hospital Trust Co.* v. *Doughton*, 187 N. C. 263, 121 S. E. 741; *State ex rel. Graff* v. *Probate Court*, supra.)

That the law-making power of this state intended to impose a succession tax upon mortgages owned by a nonresident decedent is put beyond question by the express language of the statute. (Subd. 3, sec. 12, supra.) If the state has the power to impose the tax and has required the imposition thereof, the courts are required to follow the law, regardless of what they may think of the law's policy.

The learned district judge, considering that as a mortgage is a mere security for a debt and passes with the debt to any lawful holder thereof (*Gallatin County* v. *Beattie*, 3 Mont. 173; *Holland* v. *Commissioners*, 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 575; *Hull* v. *Diehl*, 21 Mont. 71, 52 Pac. 782; *Monidah Trust* v. *Sheehan*, 45 Mont. 424, 123 Pac. 629), and that the situs of the notes under the doctrine of *mobilia sequuntur personam* is at the domicile of the owner, in this case being actually at his domicile, held that the mortgages

[80 Mont. 574.]

were not within the jurisdiction of this state and consequently not subject to taxation in this state. This conclusion is sound so far as the imposition of taxes upon the property itself is concerned. But is it conclusive as to whether a transfer, or succession tax, may be imposed thereon?

It is true that the state may not impose a property tax upon the promissory notes which are evidences of debt secured by mortgages of record upon real property in Montana. (Const., Art. XII, sec. 2; sec. 1998, Rev. Codes 1921.)

A tax on property must be limited to property actually [2] within the jurisdiction of the taxing power. (*State ex rel. Bankers' Trust Co.* v. *Walker*, 70 Mont. 484, 226 Pac. 894; *State ex rel. Rankin* v. *Harrington*, 68 Mont. 1, 217 Pac. 681.) An excise, or succession, tax is not a tax on property. "The burden or the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance." (*Gelsthorpe* v. *Furnell*, 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267; *In re Tuohy's Estate*, 35 Mont. 431, 90 Pac. 170.) It is a tax upon the transfer, transaction or right to receive property, as the supreme court of Wisconsin said in *State* v. *Bullen*, 143 Wis. 512, 128 N. W. 109. (*Matter of Penfold's Estate*, 216 N. Y. 163, Ann. Cas. 1916A, 783, 110 N. E. 497; *State of Colorado* v. *Harbeck*, 232 N. Y. 71, 133 N. E. 357; *Chaffin* v. *Johnson*, 200 Iowa, 89, 204 N. W. 424; *Walker* v. *People*, 64 Colo. 143, 8 A. L. R. 855, 171 Pac. 747.)

The precise question is, can it be held, for the purpose of [3, 4] imposing a succession or transfer tax thereon, that the property affected by this proceeding is within the jurisdiction of the state?

"According to the fact of power" the question must be answered in the affirmative. The reason is that the state has jurisdiction of the person and property of the debtor and the creditor must come into this state and apply to the jurisdiction of our courts if he is obliged to enforce his demand by process of law. This principle is recognized in *State ex rel. Bankers' Trust Co.* v. *Walker*, *supra*, and has been variously

586    State ex rel. Walker et al. *v.* Jones.    [Oct. T. '27

[80 Mont. 574.]

invoked. (*Blackstone* v. *Miller,* 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277 [see, also, Rose's U. S. Notes]; *Liverpool & London & Globe Ins. Co.* v. *Board of Assessors,* 221 U. S. 346, L. R. A. 1915C, 903, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550; *Matter of Houdayer,* 150 N. Y. 37, 55 Am. St. Rep. 642, 34 L. R. A. 235, 44 N. E. 718; *State ex rel. Graff* v. *Probate Court,* supra; *State ex rel. Marsh* v. *Probate Court,* 168 Minn. 508, 210 N. W. 389; *Hoyt* v. *Keegan,* 183 Iowa, 592, 167 N. W. 521; *Chaffin* v. *Johnson,* 200 Iowa, 89, 204 N. W. 424; *In re Rogers' Estate,* 149 Mich. 305, 119 Am. St. Rep. 677, 11 L. R. A. (n. s.) 1134, 112 N. W. 931.)

What of the character of the debt? The promissory notes are mere evidences of debt secured by mortgages. "The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicile of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable" (citing cases). (*Wyman* v. *Halstead,* 109 U. S. 654, 27 L. Ed. 1068, 3 Sup. Ct. Rep. 417.)

The debtor must pay his debt no matter whether the original creditor, the payee, or another, owns the evidence of the debt. If the debtor refuses to pay, the creditor—the holder of the evidence of the debt—must come into the debtor's state and ask the assistance of its courts to make the debtor pay. In this case the holders of the mortgage debt must come into Montana, if the debtors do not pay, to obtain judgment on the notes and to foreclose the mortgages. This state has jurisdiction of the persons of the debtors and of the property mortgaged.

In the leading case of *Blackstone* v. *Miller,* supra, it appeared that Blackstone, the testator, died domiciled in Illinois. A New York firm owed him $10,000 and upward, and he had

nearly $5,000,000 on deposit in a New York bank. Mr. Justice Holmes, delivering the opinion, said: "If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the state of New York, then New York may subject the transfer to a tax. (*United States* v. *Perkins,* 163 U. S. 625, 628, 629, 41 L. Ed. 287, 16 Sup. Ct. Rep. 1073 [see, also, Rose's U. S. Notes]; *McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 429, 4 L. Ed. 579.) But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. The principle has been recognized by this court with regard to garnishments of a domestic debtor of an absent defendant. (*Chicago, Rock Island & Pacific Ry. Co.* v. *Sturm,* 174 U. S. 710, 43 L. Ed. 1144, 19 Sup. Ct. Rep. 797. See *Wyman* v. *Halstead,* 109 U. S. 654, 27 L. Ed. 1068, 3 Sup. Ct. Rep. 417.) What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. * * * Power over the person of the debtor confers jurisdiction, we repeat. And this being so we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

In *Matter of Houdayer,* supra, the New York court of appeals said: "Where the right, whatever it may be, has a money value and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owing the right coming into this state, it is property within this state for the purpose of a succession tax. Thus the right

in question is property, because it is capable of being owned and transferred. It is within this state, because the owner must come here to get it. It is subject to taxation, because it is under the control of our laws.''

The *Blackstone Case* was followed by the appellate division of the supreme court of New York in *Matter of Daly*, 100 App. Div. 373, 91 N. Y. Supp. 858, affirmed 182 N. Y. 524, 74 N. E. 1116. Marcus Daly, a resident of Montana, died in the city of New York on November 12, 1900. His estate was probated in Montana. William G. Rockefeller owed Mr. Daly $1,300,518.91, desired to pay it, and on November 1, 1900, drew a check for that amount in Daly's favor which he gave to Daly's secretary. As Daly was unconscious the check was indorsed by Mr. Lalor, the secretary, and placed in a special account to Daly's credit in the National City Bank. The bank paid interest on the account. Mr. Daly also had on deposit approximately $265,000 with Flower & Co., bankers and brokers. Both sums were received by the estate of Daly and were inventoried as money belonging to him in Montana, and an inheritance tax was paid upon the money in this state. While the court held these sums to be money on deposit, it said: ''Assuming, however, that these sums of money be treated as debts in the ordinary sense due from Rockefeller and from Flower & Co., we think they constituted property within the meaning of the Transfer Tax Law and the policy of the state with respect thereto.   *   *   *   There can be no doubt but that a debt is property within the meaning of the statute.   *   *   * Being property, the question to be decided is, 'Is it property within this state?' This is no longer a question to be determined by process of reasoning or argument. That has already been exhaustively done.''

We do not overlook the fact that in the *Blackstone Case* it is said that ''bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions.'' Evidently this

language was written into the opinion by its distinguished author with the intention of limiting the decision to the precise question before the court. But the courts have not been content thus broadly to couple bonds and promissory notes as a proposition of universal application.

In *Buck* v. *Beach*, 206 U. S. 392, 11 Ann. Cas. 732, 51 L. Ed. 1106, 27 Sup. Ct. Rep. 712, Mr. Justice Peckham said: "A distinction has been sometimes taken between bonds and other specialty debts belonging to the deceased, on the one hand, and simple contract debts on the other, for the purpose of probate jurisdiction, and the probate court, where the bonds are found, has been held to have jurisdiction to grant probate, while in the other class of debts (including promissory notes) jurisdiction has attached to the probate court where the debtor resided at the death of the creditor. (1 Williams on Executors, 6th Am. from 7th English ed., bottom paging 288, 290, note (h) ; *Wyman* v. *Halstead, Admr.*, 109 U. S. 654, 27 L. Ed. 1068, 3 Sup. Ct. Rep. 417. See, also, *Beers* v. *Shannon*, 73 N. Y. 292; *Owen* v. *Miller*, 10 Ohio St. 136, 75 Am. Dec. 502.) Under such rule, the debts here in question were not property within the state of Indiana, nor were the promissory notes themselves, which were only evidences of such debts. The rule giving jurisdiction where the specialty may be found, has no application to a promissory note." In this decision, Mr. Justice Holmes concurred. (And see *Wheeler* v. *Sohmer*, 233 U. S. 434, 58 L. Ed. 1030, 34 Sup. Ct. Rep. 607 [see, also, Rose's U. S. Notes].)

The supreme court of Minnesota, in *State ex rel. Graff* v. *Probate Court*, supra, having under consideration a case like the present, and statutes practically identical with ours, declared that the devolution of debts owed by residents of that state, whether evidenced by promissory notes or note, is subject to a succession tax in Minnesota although the debts were owing to and were held by nonresident decedents. The court said: "Whether the right of succession to promissory notes

590    State ex rel. Walker et al. v. Jones.    [Oct. T. '27

[80 Mont. 574.]

held by nonresidents is taxable by the state having jurisdiction over the maker does not appear to have received much attention from the courts. But it is difficult to see why the reasoning which establishes the right to tax the transfer of an ordinary debt does not also establish the right to tax the transfer of a promissory note which is merely an evidence of debt.'' And again: "It is said that bonds and commercial paper are something more than mere evidences of indebtedness, and it has been held that they may be subjected to a succession tax by the state within whose jurisdiction they are found, although neither the debtor nor the creditor are residents of such state; and this is perhaps true, but, if so, it does not divest the state having jurisdiction of the debtor of any power possessed by such state to enforce its own tax.''

*Gilbertson* v. *Oliver*, 129 Iowa, 568, 4 L. R. A. (n. s.) 953, 105 N. W. 1002, is relied upon by defendant, but the holding in that case was departed from in *Hoyt* v. *Keegan*, 183 Iowa, 592, 167 N. W. 521, the reason given being that after *Gilbertson* v. *Oliver* was decided Iowa amended its statute, making it more comprehensive. However that may be, the amended Iowa statutes is in effect no more comprehensive than our own. Each is designed to exert the full taxing power of its state. In *Hoyt* v. *Keegan* the court said the question then confronting it was whether a fair construction of the amended statute would permit a distinction to be made as between intangible property represented by negotiable paper and that represented otherwise. It followed *State ex rel. Graff* v. *Probate Court*, supra, and held the succession tax warranted.

Speaking for the court in *Chaffin* v. *Johnson*, 200 Iowa, 89, 204 N. W. 424, Mr. Chief Justice Faville denied the existence of a distinction between a bank deposit, as in the *Blackstone Case*, and one involving a note given by a resident of Iowa, secured by a mortgage upon Iowa lands, the note and mortgage being owned by the estate of a decedent in California. The learned jurist declared the distinction shadowy and without

substance.  He continued: ''The question is not whether legal process has been resorted to for the collection of the debt due from the debtor.  The debt in fact exists in Iowa, although it may be evidenced by an instrument in the possession of a person in a foreign state.  The courts of this state have jurisdiction to enforce the collection of that debt against the debtor residing in this state and against the property secured by the mortgage, and the creditor must invoke the law of this state to obtain the possession and the benefit and enjoyment of the property in question.  That the state has power in respect to property, so located, or brought within jurisdiction of its courts to tax the right to succeed to the ownership, is expressly held by us in *Hoyt* v. *Keegan,* supra.  It must be remembered that the tax under this statute is not imposed against the property itself.  It is a tax upon the right to the succession.''

In Michigan it is held that mortgages, notes and land contracts representing property situated in that state owned by and in the possession of a nonresident at the time of his death in another state are subject to a succession or inheritance tax imposed by the statutes of Michigan.  (*In re Rogers' Estate,* supra.)

The legislative assembly of this state has declared that mortgages owned by nonresidents are subject to a succession tax.  No other meaning can be given to the statutes quoted above.

If the creditor must come into this state to enforce his demand against the debtor resident here, if the estate of the decedent must come here to foreclose the mortgages, for the purpose of imposing a succession tax the property is within the jurisdiction of this state.  What was decided in *State ex rel. Bankers' Trust Co.* v. *Walker,* supra, does not conflict with what is here decided in any way.  The language of that opinion was used, and the observations respecting the statute were made, in considering the question then before us for decision, and had no reference to a different condition than

that then presented. It is a rule of universal application that
[5] general expressions used in a court's opinion are to be
taken in connection with the case under consideration. (*Bram-
well* v. *United States F. & G. Co.,* 269 U. S. 483, 70 L. Ed.
368, 46 Sup. Ct. Rep. 176.) What we have just said is like-
wise applicable to *State ex rel. Murray* v. *Walker,* 64 Mont. 215,
210 Pac. 90, where the question for decision was widely dif-
ferent from the instant case. If the language, "although a
tax of the character of the one under consideration is not
a property tax, but an excise upon an inheritance—a duty
imposed upon the privilege of receiving property by in-
heritance [citing cases]—it is nevertheless subject to the gen-
eral rules which determine when a tax of any character is
imposed," were followed implicitly and given the effect which
counsel for respondent say should be given to it, the state could
not even impose a succession tax upon an intangible such as
a simple contract debt whether evidenced by writing or not.
This cannot be, and no such pronouncement was intended.

The case of *McLaughlin* v. *Cluff,* 66 Utah, 245, 42 A. L. R.
347, 240 Pac. 161, is much like *State ex rel. Bankers' Trust
Co.* v. *Walker,* supra, and is readily distinguishable from the
case at bar. There the holders of the mortgage bonds were
not required to go into the courts of Utah for relief; the prop-
erty involved was not within the jurisdiction of Utah upon any
theory.

The question, then, is resolved to this: If the state has the
power to impose the tax, there being no constitutional objec-
tion, the right to impose it must be upheld.

The power seems clear. All the authorities in point sustain
it. There is no direct authority to the contrary which has been
called to our attention.

There does not appear to be any constitutional objection.
(*Blackstone* v. *Miller,* supra; *Wheeler* v. *Sohmer,* supra; *State
ex rel. Graff* v. *Probate Court,* supra.) The fact that two states
[6] may exact an inheritance tax from the same property

does not infringe any rule of constitutional law. (*Knowlton v. Moore,* 178 U. S. 41, 44 L. Ed. 969, 20 Sup. Ct. Rep. 747; *Frick* v. *Pennsylvania,* 268 U. S. 473, 42 A. L. R. 327, 69 L. Ed. 1058, 45 Sup. Ct. Rep. 603.)

It follows that the judgment must be reversed, and it is so ordered.

*Reversed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.