In the matter of the estate of GEORGIANA E. HARTMAN,
deceased.

[Decided December 20th, 1905.]

1. For the purpose of assessing collateral inheritance tax, the *situs* of
the personal property of the decedent is the domicile of the decedent at
the time of death, and the right of its imposition is not affected by the
fact that a statute of a foreign state subjects to similar taxation such
portion of the decedent's personal estate as is located therein.

2. Where a husband and wife resided together most of the time at her
home in New York City, but spent the week ends at the husband's
domicile in New Jersey, where he was engaged as a clergyman, the wife's
domicile was that of her husband, in New Jersey.

3. Where a decedent was domiciled in this state at the time of her
death, collateral inheritance tax was properly assessed on legacies be-
queathed to collateral relatives as of the date of her death, regardless of
the fact that her will was not probated in New Jersey.

On appeal from assessment of collateral inheritance tax.

*Mr. John R. Hardin,* for the appellant.

*Mr. Edward D. Duffield,* assistant attorney-general, and *Mr.*
*Theodore Backes,* for the respondents.

BERGEN, VICE-ORDINARY.

The decedent, Georgiana E. Hartman, was the wife · of
Charles Harvey Hartman, they having married on the 5th day
of April, 1899, in New York City. At the time of the marriage
the husband was the rector of the Episcopal church in the city
of Dover, in this state, and occupied, with his mother, the rec-
tory of his parish. The furniture in use belonged to the mother,
who managed the house—had the entire charge thereof—and
remained in the rectory after the marriage upon the same
terms. It is admitted by the appellant that the legal residence
of the husband never changed, and that he has, since his settle-

ment in Dover, continued to be a resident there. The decedent was a wealthy woman, and at the time of her marriage owned and resided in a valuable property on Madison avenue, in New York City, and until her death maintained her establishment at that place, living in the liberal manner her wealth justified. It appeared in the cause that the wife had repeatedly declared that she would never remove to Dover for the purpose of establishing her home there; that after the marriage the husband lived with his wife in New York City during the week, she going with him to Dover at the end of each week, where they remained until the beginning of the next week, in order that the husband might officiate during the Sunday services; that the wife also went to Dover with her husband to attend occasional entertainments arranged for the benefit of the church; that it was her practice to spend about two weeks in the spring and a like period in the autumn of each year at the rectory in Dover; that these visits were a part of her summer vacation, the residue of which she usually spent with her husband at Long Branch, to which place she took her servants, horses and carriages; that in the month of May, 1903, the decedent accompanied her husband to Dover for the purpose of attending a church entertainment, expecting to remain but a day or two, and while there was taken suddenly ill and died, and her remains were at once taken to her residence in New York City, the funeral services being held at the residence, and also at St. Thomas' Church, in that city.

It was further made to appear that the will of the decedent was admitted to probate by the surrogate of the county of New York, and that in the application for probate her residence was described as being in New York City; that the decedent had no property of any kind or description in the State of New Jersey, and never at any time obtained a residence therein, beyond such as the law imputes to a wife of one whose domicile is within this state; that her property consisted of real and personal estate, the personal remaining in the custody of the decedent in the state where she resided at the time of her marriage, and all of the real estate being located in the same place.

The executors of the decedent proceeded to administer the estate under the laws of the State of New York, paying to the proper authorities of that state collateral inheritance taxes levied against legacies to collaterals upon $77,500.

In January, 1905, one Elmer King, having been appointed appraiser by the surrogate of the county of Morris, proceeded to and did appraise so much of the estate of the decedent as would be liable to a tax under the laws of this state, making subject to a tax "estates, gifts, legacies, devises and collateral inheritances in certain cases." The appraiser so appointed having made his report, the surrogate of such county assessed against the collateral legatees an inheritance tax of the precise character and amount levied and collected by the authorities in New York City, and it is from this order of the surrogate that this appeal has been taken. The appellants insist that, although the domicile of the husband of the testatrix was in New Jersey at the time of the death of the decedent, the usual rule which makes the domicile of the husband the domicile of the wife does not apply in cases of this character, and that for the purpose of levying a succession tax, a decedent, being a wife, may have a residence for the purpose of taxation separate from the legal domicile of the husband. The appellants also insist that as this will was probated in a foreign jurisdiction, within which all of the property which passed by the will was located, succession taxes were due and payable only to the authorities of the state within which all of the property was located; and, further, that the right to levy a tax of this character against collateral legatees is subject to the fact of administration, and that if property within a foreign jurisdiction is not brought within the state for distribution among the legatees the surrogate is without authority to make the assessment complained of.

That the personal property of this testatrix was subject to the law of New York regarding succession taxes has been so often determined as to place the question beyond useful argument. *Matter of Houdayer, 150 N. Y. 37,* where funds deposited in bank, subject to draft at will, were held liable; *Matter of Estate of Romaine; 127 N. Y. 80,* where securities

kept in a safe deposit vault by a non-resident were, after his death, subjected to such a tax.

It is thus apparent that if this assessment be sustained the result will be the requirement of the payment of two taxes, of like character, by the same legatees, for the right of succession to the gifts of the testatrix, but this unfortunate situation cannot control the determination of the questions presented, for such a condition frequently arises, and while its presence always induces most careful consideration on the part of the court to find some legal method to prevent it, it must be submitted to unless it can be avoided under settled rules relating to the subject. *State, Golding* v. *Chambersburg, 37 N. J. Law (8 Vr.) 258; Blackstone* v. *Miller, 188 U. S. 189.*

If this testatrix at the time of her death was a resident of this state her personal estate passed to these collateral legatees under her will, subject to the assessment for succession taxes, the order for the assessment of which is here complained of, for "It is still the law that personal property is sold, transmitted, bequeathed by will, and is descendible by inheritance according to the law of the domicile." *Eidman* v. *Martinez, 184 U. S. 578.*

The law of New York on this subject is for all practical purposes identical with the law of this state, and in construing it Judge Gray, in *Matter of the Estate of Swift, 137 N. Y. 77,* presents very strong and cogent reasons in support of his opinion that the tax provided for is only enforceable as to property which, at the time of its owner's death, was within the territorial limits of the domiciliary state, but the majority of the court were not convinced by his reasoning, and held that personal property of a resident decedent, wheresoever situated, whether within or without the state, was subject to the tax imposed by the act. The great weight of authority favors the principle adopted by the New York court of appeals holding that the tax imposed is on the right of succession under a will, or by devolution in case of intestacy, and that as to personal property, its *situs,* for the purpose of a legacy or succession tax, is the domicile of the decedent, and the right to its imposition is not affected by the statute of a foreign state, which sub-

jects to similar taxation such portion of the personal estate of any non-resident testator or intestate as he may take and leave there for safekeeping, or until it should suit his convenience to carry it away. *Thomson* v. *Advocate-General, 12 Cl. & F. 1.*

The remaining question relates to the residence of the testatrix. Her abiding place was undoubtedly in the city of New York, but the legal domicile of her husband was in this state, and it must be conceded that the established rule is that where the husband and wife are living together as members of one family the residence of the husband is considered, in law, as the residence of the wife. *Baldwin* v. *Flagg, 43 N. J. Law (14 Vr.) 495; Hunt* v. *Hunt, 72 N. Y. 217; McPherson* v. *Housel, 13 N. J. Eq. (2 Beas.) 35.* The exception in favor of a married woman in proceedings for divorce against her husband, he having abandoned her and acquired a residence in another state, is founded upon a rule which does not apply where the husband and wife are living together.

The neglect to probate the will in this state was urged as depriving the surrogate of jurisdiction, but in my judgment the authority of the surrogate does not depend upon the probate of the will, which speaks from the death of the testatrix, and in my opinion the property passed to these collateral relatives by this will upon the death of the testatrix, and was not postponed or suspended for want of probate. The tax is to be assessed as of the date of the inheritance, and the amount of the assessment is not affected by the increase or depreciation of the estate between the death of the testatrix and the probate of the will, which in cases of contest may cover a long period, for the act provides that all taxes imposed "shall be due and payable at the death of the testator." *P. L. 1894 ch. 210 § 4.*

The result is that this petition must be dismissed, with costs.