THE STATE, Appellant, v. ESTATE OF CARRIE POOL BALDWIN.—19 S. W. (2d) 732.

Court en Banc, June 29, 1929.

*Stratton Shartel,* Attorney-General, *Claud E. Curtis,* Special Assistant Attorney-General, and *Walter M. Hilbert,* Prosecuting Attorney of Lewis County, for appellant.

*Harry Carstarphen* and *John F. Garner* for respondents.

WHITE, C. J.—This proceeding was begun in the Probate Court of Lewis County to assess an inheritance tax against property belonging to the estate of Carrie Pool Baldwin, deceased.

Carrie Pool Baldwin died testate in Quincy, Illinois, October 4, 1926. Her will was probated in Illinois. At the time of her death she was a resident of Illinois, as was her son Thomas A. Baldwin, sole devisee and executor of the will.

Letters of administration with will annexed were issued on her estate October 22, 1926, to Harry Carstarphan, of Hannibal, Missouri, and the will admitted to probate in Lewis County, Missouri. The Judge of the Probate Court of Lewis County appointed appraisers to fix the value of decedent's property in Missouri, subject to inheritance tax. The executor, Mr. Baldwin, filed a motion in that court asking the court to order the administrator to turn over to him all the personal and intangible property in the estate of decedent in Missouri. The motion was overruled.

The appraisers proceeded to appraise the property, made report to Mr. Carstarphan, the Missouri administrator, and Thomas A. Baldwin, executor, filed exceptions to that report. Exceptions were overruled and inheritance tax assessed against certain property belonging to the estate. The administrator appealed from the ruling of the probate court to the circuit court, where, September 5, 1927, judgment was rendered by that court setting aside that part of the appraiser's report assessing inheritance tax against the intangible property of the estate, and from that judgment the State appealed to this court.

The total property listed by the appraiser consisted of certain real estate situated in Lewis County, Missouri, valued at $55,380, and certain personal property amounting to more than eighty-five thousand dollars; a total of $141,278.09. After deductions and exemptions the total estate listed for taxation in Missouri amounted to $121,358.80. Of this the real estate, valued as above, was held by the trial court to be properly listed and assessed for inheritance transfer tax, but held that the personal property listed, amounting to more than $65,000, was not subject to taxation.

The personal property which the circuit court held was not taxable included $15,937.51, deposited with the Southeast Missouri Trust Company at Cape Girardeau, Missouri; $1078.24 deposited in Advance Exchange Bank at Advance, Missouri; two Liberty Bonds of one thousand dollars each. The remainder consisted of about thirty promissory notes due the deceased, signed by various parties, all of which, it is stated, were secured by mortgages on real estate in Missouri with the exception of five notes unsecured, three of them for small amounts. There was no evidence as to why these deposits, notes and bonds were in Missouri, nor how they came into the possession of the Missouri administrator. It is not questioned that he was rightfully appointed administrator in this State and lawfully came into possession of the said evidence of debt. The only showing that they were in fact in Missouri was the motion filed by Thomas A. Baldwin, executor, to have the property turned over to him.

On trial in the circuit court the attorney for the executor introduced in evidence a list of the property, consisting of exactly the same cash in bank, bonds and notes, listed by the executor in Missouri, as listed in the State of Illinois, and made subject to inheritance tax in that State.

I. As to the money deposited in the bank, the relation of debtor and creditor exists between the bank and the depositor. The money

212

is in fact the property of the bank, and it owes the amount of its deposit to its depositor. As to the notes, the simple relation of debtor and creditor exists. The Government bonds likewise are debts which the government owes to the bondholder. All these different kinds of property may be considered as of one class for the purposes of this case.

In recent cases we have held for the purpose of *property* tax that the *situs* of a credit is the domicile of the creditor, citing Railroad Co. v. Pennsylvania, 15 Wall. 300, where it was held that debts have no locality separate from the parties to whom they are due, and to tax them elsewhere might be unconstitutional as impairing the obligation of contract. [State ex rel. v. Gehner, 320 Mo. 702, 8 S. W. (2d) 1057, l. c. 1060, and cases cited; State ex rel. v. Gehner, 320 Mo. 691, 8 S. W. (2d) 1068.]

If we could apply the same rule to an inheritance tax we might have less difficulty in disposing of this case. The inheritance tax statute, Article XXI, Chapter 1, Revised Statutes 1919, provides an entirely independent method of ascertaining the property subject to inheritance tax from that applicable for general tax. The definition of the term "property" in the last Section, 589, of that Article, makes inapplicable any definition relating to general property tax. An inheritance tax is not a property tax, but an excise tax, or a tax upon succession. [In re Zook's Estate, 296 S. W. l. c. 780, and cases cited.]

II. Section 558, Revised Statutes 1919, imposes a transfer or inheritance tax in the following cases:

"When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of this state. When the transfer is by will, or intestate law of property within the state or within the jurisdiction of the state and decedent was a non-resident of the state at the time of his death."

We are concerned only with the second sentence, which applies to non-residents whose property at the time of death is within the State or within the jurisdiction of the State. There is no difficulty in ascertaining when *property* is within the State. According to the doctrine *mobilia personam sequuntur*, which we have held to prevail for purpose of general taxation in cases above cited, it might be said that the property in question here was not *within* the State, although it might be within the *jurisdiction* of the State. There was no claim at the time the executor filed his motion to have the property transferred to him, that the money in bank and the evi-

dences of debts were in this State only temporarily. The decedent, Carrie Pool Baldwin, had large possessions in this State including the real estate mentioned; the only personal property listed upon which an inheritance tax was levied in Illinois was the very property listed here. These notes, bonds and cash were all in the possession of the administrator in Missouri. For what purpose they are in Missouri is not shown. We cannot assume that they were in the State of Missouri for the purpose of escaping taxation in the State of Illinois. It is a reasonable inference that the cash and notes in such large quantities in Missouri, when none of it was held in Illinois, was retained in this State for the purpose of investment. They may have established a business *situs* in this State, in which case it would be subject to a general tax as well as the inheritance tax.

III. Was the property under consideration here within the jurisdiction of the State? The notes were in this State in the custody of the Missouri administrator. The debts were secured by mortgage on Missouri real estate except a few of the notes which with the bonds were also in the custody of the administrator; the money was in banks in Missouri.

Some of the adjudications on the subject are important:

In New York, in the Matter of Whiting, 150 N. Y. 27, it was held that money deposited in bank in New York of a resident of Rhode Island, was subject to the tax. The court (1. c. 30) delivered this proposition, construing an act of the legislature: "Thus the legislature intended, as I think, to repeal the maxim *mobilia personam sequuntur*, so far as it was an obstacle, and leave it unchanged, so far as it was an aid, to the imposition of a transfer tax."

The ruling in the Whiting case was affirmed by the Court of Appeals. The principle announced in the quotation would lead to inequitable results and make possible double taxation. New York later amended its statute. And it was held in In Re Colt's Estate, 211 N. Y. Supp. 541, 1. c. 543, that money of a non-resident lent to a firm doing business in New York was not subject to a transfer tax in New York.

In the State of Iowa that rule formerly prevailed, but a different rule is announced in later cases. It was held in Chaffin v. Johnson, 200 Iowa, 89, that a promissory note executed by a resident of the State, secured by mortgage on Iowa real estate, the note and mortgage belonging to a non-resident, having never been kept in Iowa "is subject to the jurisdiction of the courts of this State," and subject to the tax. The clause is similar in significance to that in our statute.

In Hoyt v. Keegan, 183 Iowa, 592, it was held that a bank deposit in Iowa was subject to collateral inheritance tax, though the

pass book and the certificate of deposit were in the actual possession of the decedent at the time of his death in Illinois. The reason was the same in both cases; the creditor was protected in the security of his debt by the courts of the State of Iowa, and he was obliged to resort to those courts in order to secure his debt and enforce its payment. Therefore it was subject to the jurisdiction of the courts of that state.

In State v. Jones, 261 Pac. 356, l. c. 357 and 359, the Supreme Court of Montana held promissory notes secured by mortgage in Montana, although the notes at the time were located in New York, the home of the decedent, were subject to the transfer tax. That was under a statute which subjects to the tax a non-resident's "property in the state or *within its jurisdiction*"—the exact phrase in our statute.

The Supreme Court of Colorado, In Re Waldron's Estate, 267 Pac. 191, construed a statute providing for such a tax on property "within the state." It was held that cash in a safe deposit box and United States bonds, certificates of deposit of a non-resident, was property within the state. The court considered the proposition that in a bank deposit the relation of debtor and creditor exists between the banker and the depositor, and the *situs* of the property for some purposes is the domicile of the depositor, but that principle has no force under the inheritance tax law.

The Federal Supreme Court, in Blackstone v. Miller, 188 U. S. 189, had under consideration the right of a state to impose a transfer tax upon bank deposits of the decedent whose domicile was in another state, although it might be so taxed in the state of the domicile. The court (l. c. 203) notes that the property when found was not *in transitu,* in such sense as to withdraw it from the power of the state; it was delayed within the jurisdiction of New York an indefinite time.

In Kinney v. Treasurer, 207 Mass. 368, it was held that promissory notes secured by mortgages on real estate in that state belonging to a non-resident decedent were subject to transfer tax. The court mentioned the rule in Massachusetts that the mortgage holds the title to the property until it is redeemed (l. c. 370), but also called attention to similar rulings in states where it was held that a mortgage is only a lien on the real estate.

Blackmoor and Bancroft on Inheritance Tax, pages 157-158, cites cases where a distinction is made between the property of a non-resident placed in the hands of an agent within the state for management and control, and where that condition does not apply, and Section 219 (p. 180) in regard to mortgage liens, states the rule that: "The succession may be taxable either at the home of the mortgagee, or in the jurisdiction where the land lies, although the

note and mortgage are actually in the possession of the mortgagee at his domicile."

The late cases cited above are samples of the prevailing doctrine in other states. But there are cases where it is held that a transfer tax cannot be imposed on promissory notes and other debts of a non-resident. Chambers v. Mumford, 187 Cal. 228, was such a case, where it was held that a note executed by a resident, payable to a non-resident, was not subject to a transfer tax. The court calls attention to the statute under which that ruling was reached (l. c. 232), which permitted such taxation upon property *"within this state,"* and held the maxim *"mobilia personam sequuntur"* applied.

The same ruling in Pennsylvania, In Re Helena, 236 Pa. 213, 46 L. R. A. (N. S.) 1167 et seq. It was held that the personal property of a non-resident in the hands of trustees in that state maintains a *situs* at the decedent's domicile and is not subject to collateral inheritance tax, because it was not *"situated within this state."* Copious notes in 46 L. R. A. (N. S.) at the pages cited considers cases from many jurisdictions. Attention is called to a tendency to adopt legislative action so as to prevent double taxation in such cases. Some states have enacted statutes which would prevent an inheritance tax upon property so taxed in another state.

The rule in Michigan is that a debt secured by mortgage in that state, payable to a non-resident, is subject to the inheritance tax (Bradley v. Merriam Estate, 9 L. R. A. (N. S.) 1104), and in that case the notes and mortgages were in the possession of the decedent at the time of his death.

We find no authority denying the right to impose the tax under a statute containing a clause similar to our "within the *jurisdiction* of the State," where the evidence of the debt and the debtor are in the State imposing it, and the creditor is a non-resident. In this case the notes secured by mortgages were on land in this State, an asset in the estate of the decedent, protected by the laws of this State. The creditor or his devisee or legatee must have recourse to the courts and laws of this State to protect his rights in a debt to secure its payment. That is equally true of the money in bank. That is likewise true of the bonds and the unsecured notes which were physically present in the State where the debtor resides. All this property was inventoried by the administrator in Missouri. It was properly and lawfully in his custody, which indicates that it was not *in transitu,* nor temporarily within the State. All of it was properly within the jurisdiction of a probate court in this State, and therefore "within the jurisdiction of the State" in the terms of the statute. Such evidences of debt could not remain in this State without being in the custody of some person or corporation who had authority over it as an agent of the owner, otherwise it

would not have been here so as. to be accessible to the administrator. It possibly acquired a business *situs* in this State. Whether it did or not it was within the jurisdiction of the State and property subject to the transfer tax. It would have been a proper subject of inquiry by the trial court to determine how and why and under what conditions these evidences of debt were in this State, but whatever the determination of that question the property was legally within the jurisdiction of the Probate Court of Lewis County in this State and subject to the tax.

That Illinois taxed it does not affect the right of Missouri to tax it, as shown in several of the cases cited. That such double taxation is inequitable and should be remedied by statute does not affect the legal right to impose the tax. We are obliged to declare the law as the lawmakers have enacted it.

Two principal cases in this State are cited, In Re Zook's Estate, 317 Mo. 986, 296 S. W. 778, and Richardson v. Busch, 198 Mo. 174. In both those cases this court had under consideration the inheritance tax applied to certificates of stock in a foreign corporation. Stock and certificates of stock are quite different from evidences of debt such as bonds and notes, although the reasoning in the Zook's case would apply here.

The judgment is reversed and the cause remanded with directions to the trial court to proceed in accordance with this opinion. *Frank, Blair* and *Gantt, JJ.,* concur; *Walker, J.,* concurs in a separate opinion; *Atwood, J.,* not sitting; *Ragland, J.,* dissents.

WALKER, J. (concurring) :—I concur in the result reached in the leading opinion, but deem it not inappropriate to state the facts as I read the record, and my reasoning and conclusion as to why the judgment of the circuit court should be reversed and remanded.

This is a suit to subject to the payment of an inheritance tax certain intangible personal property belonging to the estate of Carrie Pool Baldwin, who died testate at her home in Quincy, Adams County, Illinois, October 4, 1926. Her son and sole legatee, Thomas A. Baldwin, was, under the terms of her will, the executor of her estate. Ancillary letters of administration with the will annexed, upon her property in this State, were issued in Lewis County, Missouri, to Harry Carstarphen on the 22nd day of October, 1926. Her estate consisted of real and personal property in the states of Illinois and Missouri. Aside from her real property in Missouri, not involved in this controversy, her personal property therein consisted of cash, United States Government bonds and promissory notes of individuals and corporations, of the aggregate face value of $58,898.09. This property had been deposited by her at various times in lock boxes and safe-deposit vaults in different banks in this State.

The notice required by Sections 568, Revised Statutes 1919, of the inheritance tax law, in regard to property in this State belonging to a non-resident decedent owner, was given to the State Treasurer. On December 16, 1926, the Probate Court of Lewis County, Missouri, appointed an appraiser to appraise the property above mentioned belonging to the non-resident decedent, Carrie Pool Baldwin, for the purpose of determining the amount of the inheritance tax due thereon. This appraisement was made and upon the report of the same being filed in the probate court that court approved the report and assessed an inheritance tax upon all of the property of the non-resident decedent listed in said report as located in this State. Upon the filing of said report the domiciliary and the ancillary administrators filed in said court exceptions to the report of the appraiser, contending that the intangible personal property of the non-resident decedent located in this State, to-wit, the cash, bonds, notes, etc., was not taxable in this State on account of the nature of said property and the non-residence of the testator. The court overruled these exceptions and the administrators appealed to the Circuit Court of Lewis County, Missouri. Upon the case being heard in that court on the exceptions filed in the probate court, the ruling of the probate court was reversed, and it was held that all that portion of the appraiser's report which appraised the intangible personal property of the non-resident decedent was void. An appeal from said judgment was thereupon perfected to this court.

The section of the Missouri Inheritance Tax Law (Sec. 558, R. S. 1919), so far as the same has reference to the matter at issue, is in effect as follows: "A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed or any interest therein or income therefrom, in trust or otherwise, to persons, institutions, associations or corporations . . . When the transfer is by will, or intestate law of property within the state or within the jurisdiction of the state and the decedent was a non-resident of the state at the time of his death. When the transfer is made by a resident or by a non-resident when such non-resident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intending to take effect in possession or enjoyment at or after such death."

I. The intangible character of the personality involved in this controversy is conceded by the respondent. The question demanding solution is the liability of this property to taxation under the inheritance law of this State. The theory adopted here and elsewhere, as a basis for the imposing of what is designated as a tax of this character, is that it

is an excise or impost levied on the transfer of the property from dead hands to living ones. [Knowlton v. Moore, 178 U. S. 41, 44 Law Ed. 969; Scholey v. Rew, 23 Wall. 331, 123 Law Ed. 99; Est. of Zook-Hibbard v. Thompson, 317 Mo. 1. c. 995, 296 S. W. 778.]

Although the value of the property is used to determine the amount of the tax, this is the only respect in which it bears a resemblance to property taxation. It may well be said, therefore, that it is not a tax on property, but upon the right of its transmission or succession. [State ex rel. McClintock v. Guinotte, 275 Mo. 298; Maguire v. University, 271 Mo. 359; State ex rel. Fath v. Henderson, 160 Mo. 1. c. 215.] Probably the best definition of the same, and the one adopted by many authorities, is that it is a charge on the privilege of succession or the right of the heir, devisee or legatee to receive rather than the right of an ancestor or donor to give, or, through the instrumentality of the law, to transmit his property. [State ex rel. Garth v. Switzler, 143 Mo. 328; State ex rel. v. Mann, 76 Wis. 478; Gelsthorpe v. Furnell, 20 Mont. 299, 39 L. R. A. 170; Lacy v. State Treas., 121 N. W. (Iowa) 179.]

II. The comprehensive language of Section 558, Revised Statutes 1919, is such as to include within the power of the State any property, real, personal or mixed, or any interest therein or income therefrom, in trust or otherwise, when the property is within the State or within its jurisdiction at the time of the death of the owner, whether the latter was at the time a resident or a non-resident of the State.

The provisions of the statute being ample to authorize the imposition of this tax, it remains to be determined whether from the nature of the property or from constitutional or other considerations, the statute may be held to apply in cases as at bar.

It may be stated generally that all property, tangible or intangible, no matter where located and whether it has ever been within the State or not is subject to an inheritance tax in the state of the domicile of the decedent. We so held in In re Est. Zook-Hibbard v. Thompson, 317 Mo. 986, 296 S. W. 778, and cases cited. We are not concerned here with the reasons for such ruling, other than to say that the theory upon which the imposition of the tax was upheld was under the maxim *mobilia sequuntur personam*. Whether the application of this maxim is founded in reason as to property actually located other than at the domicile of the owner, might, if the facts warranted, be entitled to serious consideration. We say this incidentally, because a review of the cases leads to the conclusion that the application of this maxim that movables follow the person, has been, in many instances, cut down until its field has not only become very narrow, if it may be said to still exist. It will be

enough to say that the history of the origin of this maxim is stated in an interesting manner in Wharton's Conflict of Laws (3 Ed.) sec. 297, in which it is shown that the origin and application of the maxim was under conditions entirely different from those existing at the present time.

III. The facts at bar present a case the converse of those in In re Zook's Estate, supra. In the latter the question submitted was the authority of this State to levy an inheritance tax on intangible property on deposit in banks in another state than that of the decedent owner, who resided at the time of his death in this State. In the instant case it is sought to impose the tax on intangible property, located in this State, the decedent owner of which had her domicile in another state at the time of her death.

The validity, therefore, under the Constitutions, State and Federal, of the statute authorizing the imposition of an inheritance tax under the facts in the case at bar, is of moment in the determination of this case.

In Blackstone v. Miller, 188 U. S. 189, 47 Law Ed. 439, the constitutional power of a state, by virtue of the citizenship and residence of the debtor, to exact an inheritance tax in respect of a debt due from a resident of the state to the estate of a non-resident, was affirmatively declared. The indebtedness in that case consisted of bank deposits which were regarded as money for all practical purposes owned by a non-resident decedent at the time of his death and as such taxable under the inheritance or transfer law of the State. In rendering this decision the United States Supreme Court did not rest its ruling upon any distinctions between the technical indebtedness represented by a bank deposit and other forms of indebtedness, but it was expressly put upon the broader ground that the transfer of the indebtedness depends upon the law of the residence of the debtor, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor; the same principle, the court observed, that has been recognized with regard to the garnishment of a domestic debtor or an absent defendant—citing Chicago, R. I. & P. Railroad Co. v. Sturm, 174 U. S. 710, 43 L. Ed. 1144, 19 Sup. Ct. Rep. 797.

In State ex rel. Graf v. Probate Court, 128 Minn. 371, L. R. A. 1916A, 901, the devolution of debts owed to non-residents, whether evidenced by promissory notes or not, was held to be subject to a succession tax. The debts consisted of promissory notes and book accounts, the debtor being a domestic corporation. The Minnesota statute imposed a tax when a transfer was by will or the intestate

law of property within the state or within its jurisdiction and the decedent was a non-resident of the State at the time of his death. The court's holding was to the effect that the property might be subjected to the payment of a succession tax by the State in whose jurisdiction it was found.

In Chaffin v. Johnson, 200 Iowa, 96, 204 N. W. 424, the court quotes from Blackstone v. Miller, supra, to the effect that it is the law of the place where the debtor is that renders the evidences of the debt liable to the payment of a succession tax; and in reply to the contention that a distinction exists between a bank deposit and other debts it was held as applied to the statute, that the distinction was without substance and that the deposit of funds in a bank and the taking of a negotiable certificate therefor created the relation of debtor and creditor.

In State ex rel. Collector v. Bunce, 187 Mo. App. 607, 173 S. W. 101, a note belonging to the estate of a non-resident, the maker of which resided in Missouri (the administration of whose estate was had in this State), was held to be within this jurisdiction and liable to an inheritance or succession tax. The facts in regard to that case are that the note was brought to Missouri by the owner of the same when he came here a short time before his death. The decision of this court was, however, not predicated on that fact, but upon the fact that the debtor was a resident of this State and that administration was had thereon within this jurisdiction.

In Re Gibbes, 84 App. Div. 510, 83 N. Y. Supp. 53, affirmed without opinion in 176 N. Y. 565, 68 N. E. 1117, the court observed that the decisions that money left on deposit by a non-resident within New York is taxable (Re Houdayer, 150 N. Y. 37, 34 L. R. A. 235, 55 Am. St. 642, 44 N. E. 718; Re Blackstone, 69 App. Div. 127, 74 N. Y. Supp. 508, affirmed in 171 N. Y. 682, 64 N. E. 1118, which is affirmed in Blackstone v. Miller, 188 U. S. 189, 47 L. Ed. 439, 23 Sup. Ct. Rep. 277), go upon the theory that money upon deposit in a bank is the same, in effect, as if the testator had placed the money in a deposit vault, and that, therefore, it is property left by him within the State. It may be observed, however, that the argument, at least, of the United States Supreme Court in the Blackstone Case, affirms the power of the state of the debtor's domicile to exact the tax, even in respect of ordinary debts.

Although the items belonging to the estate of the non-resident which were held subject to the tax in Re Daly, 100 App. Div. 373, 91 N. Y. Supp. 858 (affirmed without opinion in 182 N. Y. 524, 74 N. E. 1116), were treated as bank deposits and so equivalent to cash, the majority of the court was of the opinion that they would be subject to the tax even if treated as debts in the ordinary sense, cit-

ing in support of this view the opinion in the United States Supreme Court in Blackstone v. Miller, supra.

IV. Many of the objections here made to the constitutionality of the statute under review were ruled upon adversely to the objectors by this court in State ex rel. McClintock v. Guinotte, 275 Mo. 298. In that case it was held that the statute was not in violation of the following constitutional provisions: Section 30 of Article 2, that no person shall be deprived of property without due process of law; Section 28 of Article 4, that no bill shall contain more than one subject, which shall be clearly expressed in its title; Section 43 of Article 4, that money received by the State shall be paid into the state treasury and not permitted to be diverted or drawn therefrom, except under lawful appropriations therefor; Sub-section 16 of Section 53 of Article 4, prohibiting the passage of local or special laws of descent or succession; Sub-sec. 21 of Section 53, of Article 4, prohibiting the passage of local or special laws affecting the estates of minors; Section 3 of Article 10, that taxes must be levied and collected for public purposes and must be uniform upon the same class of subjects.

V. The strong trend of authority in the courts of last resort in the different states is in harmony with the ruling in the Blackstone case, supra, to the effect that inheritance taxes not being taxes on property but on the privilege of the transmission or succession of the same, a state may measure such taxes by the value of the property, although it may not tax the same directly.

It is a misconception of the rulings of the Supreme Court of the United States to contend that cases subsequent to the Blackstone case overrule the latter. In an interesting and exhaustive review of these cases (relied upon by the respondent) by Mr. Harry W. Kroeger in Vol. XIV, p. 99, St. Louis Law Review, it is clearly shown that they do not overrule the doctrine of the Blackstone case. It will be found upon an analysis of the cases referred to in the respondent's brief that the facts involved therein were different from those in that case; and that whatever may have been said in criticism of the latter was in passing, and was not decisive of the issues therein submitted.

VI. The ruling in the Zook case, supra, by our own Supreme Court, that intangible property located in another state and owned by one who at the time of his demise was a resident of this State, was taxable at the domicile of the owner, does not militate against the correctness of the conclusion that the privilege of taxing the transfer or inheritance of such property could only be levied at such domicile. Although subject to the tax in

Missouri, it might also be liable to a similar tax in the state where it was located. This conclusion is but the converse of the rule established by several authorities that the power of the domiciliary state to exact a tax on the transmission of intangibles is not defeated by the imposition of a like tax by another state. [In Re Hodges, 170 Cal. 492, L. R. A. 1916-A, 837; Roark v. Matthews, 125 Ark. 378, 188 S. W. 841.]

Our statute is sufficiently broad to authorize the exaction of an inheritance tax in respect of all property within the jurisdiction of the State regardless of the domicile of the owner. Under a statute not dissimilar in its material features from that at bar, the case of Re Hartman, 70 N. J. Eq. 664, 62 Atl. 560, gives a comprehensive review of the power of a domiciliary state to exact an inheritance tax in respect of all personal property regardless of its location and its subjection to the taxing power of other states. In that case it was held that the entire personal estate of a decedent domiciled in New Jersey was subject to the tax, although a tax of precisely the same character and amount had been levied and collected in New York where the personal property was located, and this notwithstanding that the New York tax had been legally imposed. The New Jersey court observed that the unfortunate situation resulting from the required payment of the two taxes of like character by the same legatees for the right of succession to the property could not control the determination of the question, for such a condition frequently arises and while its presence always induces careful consideration on the part of the court to find some legal method to prevent it, it must be submitted to unless it can be avoided under settled rules relating to the subject.

In Re Sandford, 188 Iowa, 833, 175 N. W. 506, in reply to the contention that personal property in Nebraska could be taken into consideration in fixing the tax at the domicile of the owner in Iowa for the reason that a similar tax would be imposed and collected in Nebraska resulting in double taxation, the court said that whatever real merit may be claimed for that position the courts uniformly hold that the tax may be imposed by the state in which the property has its situs and also in the domiciliary state. "Each jurisdiction," said the court, "exercises its own separate and independent power of taxation and there is no conflict."

In Nuckolls v. Comm., 127 Va. 640, 105 S. E. 230, the court held that the fact that two states, each dealing with its own laws, have taxed the rights of succession their laws respectively confer, affords no reason for complaint on constitutional grounds. This conclusion was occasioned by the overruling of an objection to the exaction of a tax in respect of shares of stock in a national bank located in Mis-

souri, which stock was owned by a decedent domiciled in Virginia, and which stock had been subjected to a similar tax in Missouri. This opinion is replete with learning on this subject.

VII. Further concerning the contention as to the invalidity of the inheritance tax statute on the ground that it is in violation of the Fourteenth Amendment of the Federal Constitution, while not specifically referred to in the case of State ex rel. McClintock v. Guinotte, 275 Mo. 298, a like clause in Section 30, Article 2, of the State Constitution to that in the Fourth Amendment having particular reference to the right to due process of law, was construed, and it was held that the inheritance statute did not deny this right. A like conclusion is, under the most elementary rule of construction, applicable in determining whether the statute contravenes the Fourteenth Amendment. That it does not is attested by numerous cases construing like statutes. [Keeney v. New York, 222 U. S. 525, 56 Law Ed. 299, 38 L. R. A. (N. S.) 1139, and cases; Nat'l. Safe Deposit Co. v. Illinois, 232 U. S. 59, 58 Law Ed. 504, Ann. Cas. 1912-B, 430; Minot v. Treasurer & Receiver General, 207 Mass. 588, 33 L. R. A. (N. S.) 236.]

The case of Frick v. Pennsylvania, 268 U. S. 473, is by no means a denial of the right of the state where the property is located to impose an inheritance tax with respect to intangible personalty. That case has reference to the denial of the constitutional power of a domiciliary state to tax tangible personal property physically located in another state than that of the decedent and not to intangibles.

The discussion of the power to tax by Chief Justice MARSHALL, in McCullough v. Maryland, 4 Wheat. 316, has reference to property taxation, as is evident from its context and not to a tax laid upon a privilege or a right to receive property by an heir or legatee.

A clear line of demarcation is made in the Frick case between the rules governing the taxation, under inheritance or succession laws, of tangible and intangible personalty. The following paragraphs from the opinion in that case will demonstrate the correctness of that interpretation:

"Counsel for the State cite and rely on Blackstone v. Miller, 188 U. S. 189, and Bullen v. Wisconsin, 240 U. S. 625. Both of the cases relate to intangible personalty, which has been regarded as on a different footing from tangible personalty. When they are read with this distinction in mind, and also in connection with other cases before cited, it is apparent that they do not support the tax in question."

So far as relevant to the matter at issue, Blodgett v. Silberman, 277 U. S. 1, 48 Law Ed. 410, simply holds that intangible personalty has such situs at the ˙domicile of the owner that its transfer upon his death may be taxed there. There is no ground for controversy in regard to this ruling militating against the power of a state where the property is located other than that of the domicile of the decedent to also impose an inheritance tax on such property. The legal propriety of such a course has been demonstrated. Chief Justice TAFT, who wrote the opinion in the Blodgett-Silberman case, expressly states that as to the right of the state of the situs to also impose an inheritance tax on intangible personalty is not a matter of inquiry in the Blodgett-Silberman case.

The question involved in State ex rel. Auto. Ins. Co. v. Gehner, 320 Mo. 702, 8 S. W. (2d) 1057, was in reference wholly to property, and not to inheritance, taxation. When the court says ˙in that case that "bonds, mortgages and debts generally have no *situs* independent of the domicile of the owner" the reasonable interpretation of this declaration is that in limiting the situs, the court had reference to its purpose in the imposition of *ad valorem* or property taxes. No other question was in issue. A like rule of construction may be applied to a similar statement in State ex rel. Hickman v. Lewis, 256 Mo. 98, 165 S. W. 319.

For the reasons stated, so much of the judgment of the circuit court in this case should be reversed as holds that the intangible personalty in this State belonging to the estate of Carrie Pool Baldwin is not subject to the payment of an inheritance tax; and the court should be directed to enter up a judgment in conformity with this opinion.