[No. 25814. Department One. January 3, 1936.]

*In the Matter of the Estate of* JOHN LLOYD, *Deceased.*

HARRY B. KENNEDY *et al., as Administrators, Respondents,* v. WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant.*[1]

[1] Reported in 52 P. (2d) 1269.

*William H. Pemberton* and *Lyle K. Summers,* for appellant.

*Karr & Gregory,* for respondents.

STEINERT, J.—This is an appeal from a decree in probate in which it was adjudged that a certain estate, designated in the decree, was not subject to an inheritance tax.

John Lloyd, whose domicile was in Victoria, British Columbia, died intestate in Seattle, Washington, on February 25, 1934, leaving as his sole heir-at-law a nephew living in Wales. Lloyd's estate consisted of intangible property composed, for the most part, of bank deposits in the city of Seattle, and totaling, as shown by the inventory, $10,670.32.

Letters of administration were first issued in Victoria, British Columbia. Subsequently, and in part compliance with the nephew's request, the respondents herein were appointed administrators of the estate in Washington. In due time, the administrators filed their final account and petition for distribution. The appellant herein, supervisor of the inheritance tax and escheat division of the state of Washington, claimed an inheritance tax to be due the state, at the rate of three per cent of the net estate passing to the nephew. The claim was resisted by the local administrators, and, upon a hearing thereon, the court held that the estate was not subject to inheritance tax, and, therefore, disallowed the claim. From the decree following that ruling, this appeal was taken.

The trial court's decision was based upon the proposition that the situs of intangible property is always determined by the domicile of the owner, and that, therefore, the bank deposits in the city of Seattle were not within the jurisdiction of the state of Washington. The court rested its conclusion upon the case of *In re Lyons' Estate,* 175 Wash. 115, 26 P. (2d) 615. Whether the *Lyons* case is controlling here, seems to be the principal question in dispute, and, therefore, what we have to say herein will largely be in connection with that case.

But, first, we shall quote the applicable statute and make some analysis of it. Rem. Rev. Stat., § 11201 [P. C. § 7051], in so far as it is pertinent here, provides:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state, . . . shall, for the use of the state, be subject to a tax as provided for in section 11202 [prescribing a graduated

rate of levy] . . . The inheritance tax shall be and remain a lien on such estate from the death of the decedent until paid.''

This statute is precise in its choice and use of terms, and expresses the intention of the legislature as clearly and definitely as words can express it. It will be noted that the statute does not refer merely to property within the *state,* but to property *within the jurisdiction* of the state, and any interest therein. Emphasis is then added by making it apply to property of both inhabitants and *noninhabitants* of the state. To remove any possible question of doubt or dispute as to the character of property affected, the statute is made to include *intangible,* as well as tangible, property. Reversing the description, the statute refers to and includes intangible property, or any interest therein, belonging to noninhabitants, and *within the jurisdiction* of the state. Full understanding of the statute, however, comes not so much through paraphrasing it, but, rather, by re-reading it. It is meticulous in its detail and clear in its totality.

The phrase ''within the jurisdiction of this state'' is not synonymous with the phrase ''within this state.'' The former has a broader meaning and significance than the latter. The one connotes extent of power. The other denotes locality. Jurisdiction means the power to hear and determine causes. *State ex rel. Meyer v. Clifford,* 78 Wash. 555, 139 Pac. 650; *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433; *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572. When a petition in probate is presented to a superior court of this state, that court has jurisdiction of both the parties and the subject matter, and may hear and determine any matter affecting the estate. *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 299, 136 Pac. 147.

■ Bank deposits are, in law, debts owing by the bank to the depositor and as such constitute property and are subject to the laws of descent and distribution. In case of the death of the depositor, the bank deposits, which are simple contract debts, are, for the purposes of administration, considered as having their situs at the domicile of the debtor. *In re Rowley's Estate,* 178 Wash. 460, 35 P. (2d) 34. Such debts are subject to garnishment in the courts of this state and, likewise, are protected by the laws of the state. The bank deposits in this case being within the jurisdiction of a probate court in this state, they were, according to the language of the above statute, "within the jurisdiction of this state." *State v. Baldwin's Estate,* 323 Mo. 207, 19 S. W. (2d) 732.

■ The state's power over property passing by will or through the statutes of descent is plenary. *In re Fotheringham's Estate,* 183 Wash. 579, 585, 49 P. (2d) 480; *In re Ward's Estate,* 183 Wash. 604, 609, 49 P. (2d) 485. The state's power is limited only by constitutional restrictions. Having the power, it remains only for the state, through the legislature, to declare its intent. That Rem. Rev. Stat., § 11201 [P. C. § 7051], above quoted, expresses the intention of the legislature to subject property of the kind involved here to an inheritance tax, is evident upon the face of the statute. So, then, the only question is whether, in this instance, the state has the power to do what it is attempting to do. This brings us to the *Lyons* case.

■ At the outset, we may say that we now fully approve and affirm the principles laid down in that case and do not in any way recede from the views therein expressed. However, there is a vital distinction, in point of fact, between that case and this. Upon that distinction we rest our decision in this case.

It may be noted, first, that the *Lyons* case was one of escheat, based upon the provisions of chapter 133, Laws of 1907, p. 253, § 1, Rem. Rev. Stat., § 1356 [P. C. § 9877]. That section provides that, whenever any person possessed of any property *within this state* shall die intestate, leaving no heirs, such property shall escheat to the state. The case now before us rests upon the provisions of chapter 217, Laws of 1907, p. 499, § 1, carried into chapter 146, Laws of 1917, p. 593, § 1, Rem. Rev. Stat., § 11201 [P. C. § 7051], *supra.* The corresponding language of this section reads, as already stated, *"within the jurisdiction of this state."*

Both of those statutes, in their original form, were passed by the same legislature, almost concurrently, and were approved by the governor within four days of each other. The difference in phraseology is significant. The one localizes the property "within this state;" the other affects property "within the jurisdiction of this state." As we have already pointed out, there is a decided difference in the two terms.

It may also be observed that, in the *Lyons* case, the state was asserting *title* to the property, while in this case it merely seeks to collect a tax. We need not press these preliminary observations any further than to say that they lend emphasis to the intention of the legislature, as evinced in Rem. Rev. Stat., § 11201 [P. C. § 7051], to subject all intangibles to an inheritance tax in so far as the state is not inhibited by some constitutional restriction.

The real and vital distinction between the two cases, however, is this: In the *Lyons* case, the decedent was a citizen of the United States, domiciled within its territory. In the instant case, the decedent was domiciled in a foreign country. No question affecting international law, treaty rights, or reciprocity measures, is

involved here. It is simply a question of the power of the state as limited by constitutional inhibitions.

The *Lyons* case reviews the historical background of the rule founded on the maxim, *Mobilia sequuntur personam* (Movables follow the person). The case points out that, before the days of inheritance tax litigation, it was well settled that the situs of intangible property was at all times the domicile of the owner. Then came the period when the several states sought to levy inheritance taxes against various elements of value of the decedent's estate, as illustrated by *Blackstone v. Miller*, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439 (holding that a state had the right to tax the transfer, by will, of a bank deposit standing to the credit of a person domiciled in another state), and *Bullen v. Wisconsin*, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830 (holding that stocks, bonds and notes kept in one state by the owner were subject to an inheritance tax in another state wherein the owner was domiciled at the time of his death).

The multiplication of such conditions and situations led to an irreconcilable conflict between the states in exercising their powers with reference to inheritance taxes imposed upon a single estate. Finally, in January, 1930, the supreme court of the United States met the problem squarely by recognizing and stating that the practice of permitting different states to tax the same testamentary transfer on different, and more or less inconsistent, principles had the effect of disturbing good relations and producing discontent among the states. As a solution of the problem, the court applied the maxim of *mobilia sequuntur personam* and laid down the rule, as of general application, that the situs of intangibles, for inheritance tax purposes, was the domicile of the owner. *Farmers Loan & Trust Co. v. Minnesota*, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371,

65 A. L. R. 1000. That case was approved, followed, and somewhat extended in *Baldwin v. Missouri,* 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; *Beidler v. South Carolina Tax Commission,* 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131; and *First National Bank of Boston v. Maine,* 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401. Obviously, the invocation of the Latin maxim and the enunciation of the rule based thereon were dictated by considerations of policy, convenience, and expediency, and were employed to accomplish a practicable and desired result. The purpose of the rule, as disclosed by these decisions, was to prevent multiple taxation of the same estate by different states, or, to express it conversely, to secure immunity from taxation by more than one state. That is the rule on which the *Lyons* case was based, and the facts in that case brought it squarely within the limits of that rule.

But here we have a different state of facts, as already shown. No contest between states is possible. No disruption or conflict of feeling among them can occur. No state, other than the state of Washington, is here concerned. The advantage that might otherwise be lost by this state would not be gained by any other state. In short, the reason for the rule, built upon a legal fiction, does not exist, and therefore the rule has neither purpose nor efficacy in this case. To apply the rule in such a case as this, would be shaping the occasion to meet the rule instead of applying a rule to meet the circumstances. The cases cited from the United States supreme court and the *Lyons* case, as well, govern the power of the state in its relation with other states of the Union, but they are not applicable where relations between states are not involved.

In *Burnet v. Brooks,* 288 U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747, decided in March, 1933,

the supreme court of the United States had before it the question of the taxability of intangibles within the United States but owned by a foreign subject. In that case, the decedent was a subject of Great Britain and a resident of Cuba. The property involved consisted of bonds of foreign and domestic corporations, stock in foreign corporations, and cash on deposit, all in the possession of persons in New York. The commissioner of internal revenue determined that these assets were subject to the Federal Estate Tax Act of 1924, chapter 234 [43 Stat. 253, 303-307, Title 26, U. S. C. A., §§ 1093-1096]. On final appeal, the supreme court of the United States held that all these intangibles, with the exception of the money on deposit, were subject to taxation. The exception as to the bank deposit was made because it was expressly excluded by the act.

It was urged in that case that the reference in the statute to situs must, as to intangibles, be taken to incorporate the principle of *mobilia sequuntur personam*. In answer to that contention, the court cryptically said: "But the Congress did not enact a maxim." Nor did the legislature of this state, either expressly or by implication, enact a maxim when it declared that "all property within the jurisdiction of this state" shall be subject to the tax. On the question of power to lay the tax, the United States supreme court said, in the *Burnet* case, on page 399:

"As jurisdiction may exist in more than one government, that is, jurisdiction based on distinct grounds— the citizenship of the owner, his domicile, the source of income, the situs of the property—efforts have been made to preclude multiple taxation through the negotiation of appropriate international conventions. These endeavors, however, have proceeded upon express or implied recognition, and not in denial, of the sovereign taxing power as exerted by governments in the exercise of jurisdiction upon any one of these grounds."

While the court, further along in its opinion, expressly stated that it in no way limited the authority of its decisions as to state power, it nevertheless made the reason and ground of its reaffirmation in that respect very clear, in these words:

"The limits of State power are defined in view of the relation of the States to each other in the Federal Union. The bond of the Constitution qualifies their jurisdiction. This is the principle which underlies the decisions cited by respondents. These decisions established that proper regard for the relation of the States in our system required that the property under consideration should be taxed in only one State and that jurisdiction to tax was restricted accordingly."

The court thereby recognized the sovereign power of the state with reference to taxation, subject only to constitutional restrictions. Except for inhibitions growing out of the relations between the several states, and in the absence of some restraining rule of international law or agreement, there is no constitutional restriction upon the state's sovereign power to levy an inheritance tax.

The power of the state being untrammeled, and the legislature having emphatically expressed its intention to assert that power with respect to intangibles over which it has jurisdiction, whether the same be owned by inhabitants of the state or not, we must give effect to the legislative mandate and declare that the property here involved is subject to the inheritance tax.

The judgment is reversed, with direction to the trial court to proceed in accordance with the views herein expressed.

MITCHELL, BLAKE, GERAGHTY, and TOLMAN, JJ., concur.